IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ADORACION PANTALEON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 08 CV 3730 |
| | ) | |
| NATIONWIDE INSURANCE COMPANY | ) | Honorable Judge Zagel |
| OF AMERICA, | ) | Magistrate Judge Keys |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

Defendant, Nationwide Insurance Company of America ("Nationwide"), by counsel, David

E. Kawala and Mario M. Iveljic of Swanson, Martin & Bell, LLP, submits its Rule 12(b)(6) motion

to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted. In

support thereof, Nationwide states as follows:

1.    A complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure for failure to state a claim if it appears beyond a doubt that a claimant can prove no

set of facts entitling him to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

2.    Plaintiff has filed a lawsuit against Nationwide seeking a Declaratory Judgment

compelling Nationwide to arbitrate an alleged underinsured motorist claim and seeking an award of

attorneys' fees and costs for Nationwide's alleged vexatious and unreasonable delay in submitting to

arbitration.

3.    Plaintiff's Complaint must be dismissed for failure to state a claim upon which relief

can be granted because Plaintiff has not fully or partially exhausted all applicable bodily injury

1

liability insurance policies and, therefore, her demand for uninsured motorist arbitration is premature under the Nationwide insurance policy and Illinois law.

4.      Even if Plaintiff's demand for arbitration is not premature, Plaintiff's Complaint must be dismissed because Plaintiff can pursue arbitration through the American Arbitration Association under Illinois law, 215 ILCS 5/143a, and under the Nationwide insurance policy.

5.      Accordingly, dismissal pursuant to Rule 12(b)(6) is appropriate as to all of Plaintiff's claims.

6.      Additional support for Defendant's motion is set forth in the accompanying Memorandum of Law.

WHEREFORE, Defendant NATIONWIDE INSURANCE COMPANY OF AMERICA respectfully requests that this Court grant its motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, enter an order dismissing Plaintiff's claims with prejudice, and for any other relief this Court deems just and proper, including reasonable costs and attorneys' fees expended by this defendant.

ORAL ARGUMENT REQUESTED.

Respectfully Submitted,

By:____/s/ Mario M. Iveljic_____
        One of the attorneys for the Defendant
        Nationwide Insurance Company of America

David E. Kawala ARDC# 6191156
Mario M. Iveljic, ARDC# 6280267
Swanson, Martin & Bell, LLP
330 N. Wabash, Suite 3300
Chicago, IL 60611
(312) 321-9100
(312) 321-0990 FAX
dkawala@smbtrials.com
miveljic@smbtrials.com

2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ADORACION PANTALEON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 08 CV 3730 |
| | ) | |
| NATIONWIDE INSURANCE COMPANY | ) | Honorable Judge Zagel |
| OF AMERICA, | ) | Magistrate Judge Keys |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS RULE 12(B)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant, NATIONWIDE INSURANCE COMPANY OF AMERICA, (hereinafter "Nationwide"), for its Memorandum of Law in Support of its Rule 12(b)(6) Motion to Dismiss, states as follows:

### I.     Background

On May 22, 2008, Plaintiff filed a Complaint at Law in the Circuit Court of the Sixteenth Judicial Circuit, Kane County, Illinois.  A true and correct copy of the Complaint is attached hereto as Exhibit A.  Plaintiff's Complaint contains two counts:  Count I for a Declaratory Judgment to Compel Arbitration and Count II for a violation of 215 ILCS 5/155.

Plaintiff alleges that on April 10, 2007, she was involved in a motor vehicle accident in Aurora, Illinois. See Exhibit A, ¶4.  At the time of the alleged incident, Plaintiff was insured by Nationwide through a policy of insurance attached to Plaintiff's Complaint as Exhibit A.  See Exhibit A, ¶3.  On April 24, 2007, Plaintiff sent correspondence to Nationwide, providing notice of her claim and seeking recovery for underinsured motorist benefits. See Exhibit A, ¶5.

Plaintiff filed a lawsuit against Yasuo Ito and Thomas Kuter in the Sixteenth Judicial

1

Circuit, Kane County, Illinois, in a case captioned *Adoracion Pantaleon v. Yasuo Ito and Thomas Kuter*, Case No. 07 L 297, to recover for the injuries she allegedly sustained in the accident. See Exhibit E to Plaintiff's Complaint. On January 10, 2008, defendant Ito was dismissed from the Kane County lawsuit (the "*Kuter* lawsuit") as defendant Ito settled its claim with Plaintiff. See Exhibit E to Plaintiff's Complaint. Defendant Kuter was not dismissed from the lawsuit and, upon information and belief, the Kane County lawsuit is still pending against defendant Kuter. See Exhibit E to Plaintiff's Complaint.

On March 10, 2008, after defendant Ito was dismissed from the Kane County lawsuit but while the *Kuter* lawsuit was still pending, Plaintiff demanded that Nationwide participate in arbitration pursuant to the underinsured motorist provisions in the Nationwide Automobile Insurance Policy. See Exhibit A, ¶12. On May 5, 2008, while the *Kuter* lawsuit was still pending, Plaintiff again demanded that Nationwide participate in arbitration pursuant to the insurance policy. See Exhibit A, ¶15. About two weeks later, on May 22, 2008, while the *Kuter* lawsuit was still pending, Plaintiff filed the instant lawsuit due to Nationwide's alleged "unreasonable and vexatious delay" in submitting to arbitration.

## II.    Standard Of Review Under Federal Rule Of Civil Procedure 12(B)(6)

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint or cross claim, not to decide the merits of the case. *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). The court must construe the complaint's allegations in a light most favorable to the claimant and accept all well-pleaded facts as true. *Bontkowski v. First Nat. Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993). The complaint should be dismissed for failure to state a claim if it appears beyond a doubt that a claimant can prove no set of facts entitling him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

2

### III.    <u>Argument</u>

Plaintiff's Complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  Plaintiff's Complaint seeks a Declaratory Judgment compelling Nationwide to arbitration pursuant to the underinsured motorist provisions contained in the Nationwide insurance policy and seeks attorneys' fees pursuant to 215 ILCS 5/155 for Nationwide's alleged vexatious and unreasonable delay in submitting to arbitration.  However, Plaintiff's Complaint is (1) premature, as the *Kuter* lawsuit is still pending; and (2) unnecessary, as Plaintiff can pursue arbitration through the American Arbitration Association under Illinois law, 215 ILCS 5/143a, and under the Nationwide insurance policy.   Therefore, Plaintiff's Complaint must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**A.**        **Plaintiff's Complaint and demand for arbitration are premature as the Kuter lawsuit is still pending.**

Plaintiff demanded arbitration on March 4, 2008 and on May 5, 2008.  On both of those dates Plaintiff's lawsuit against defendant Kuter was still pending in the Kane County Circuit Court, a fact omitted by Plaintiff in her Complaint yet apparent from a review of Exhibit E to Plaintiff's Complaint.  In fact, the *Kuter* lawsuit is still pending, another fact omitted by Plaintiff in her Complaint.  As demonstrated in Exhibit E to Plaintiff's Complaint, the state court lawsuit was dismissed as to defendant Ito only.  Defendant Kuter was never dismissed from the state court lawsuit.  Because the *Kuter* lawsuit is still pending, Plaintiff has not fully or partially exhausted all applicable bodily injury liability insurance policies and, as a matter of law, her demand for uninsured motorist arbitration against Nationwide is premature.

Under the Nationwide insurance policy, an uninsured motor vehicle is one which is underinsured – a motor vehicle for which bodily injury liability coverage is in effect but the total amount is less than the limits of Nationwide's coverage.  See Exhibit A to Plaintiff's Complaint,

3

pg. U2. This definition is consistent with the definition of "underinsured" in the Illinois Insurance Code, 215 ILCS 5/143a-2(4), which provides that the term "underinsured motor vehicle" means a motor vehicle whose ownership, maintenance or use has resulted in bodily injury or death of the insured and for which the sum of the limits of liability under <u>all</u> bodily injury liability insurance policies is less than the limits for underinsured coverage provided to the insured as defined in their insurance policy. (Emphasis added).

The Nationwide insurance policy and Section 215 ILCS 5/143a-2(4) clearly state that underinsured motorist coverage only applies when the amount of coverage exceeds the limits of liability under all applicable bodily injury liability insurance policies. *See Marroquin v. Auto-Owners Ins. Co.*, 245 Ill.App.3d 406, 409 (3rd Dist. 1993). Underinsured motorist coverage comes into play only if the offending motorist is "underinsured" as that term is used in the Insurance Code. *Id.* Therefore, there can be no underinsured motorist coverage under the statute or under the Nationwide policy if the insured recovers under a bodily injury liability policy in an amount equal to or greater than the stated underinsured policy limit. *Id.*

Moreover, the Nationwide insurance policy provides for the following exhaustion provision:

> **6.    We will not pay any underinsured motorist loss until the limits of all bodily injury liability coverage available from any source have been fully or partially exhausted by payment of settlements or judgments to the insured...**

See Exhibit A to Plaintiff's Complaint, pg. U4. This provision is consistent with the Illinois Insurance Code, 215 ILCS 5/143a-2(7), which allows an insurance policy to "include a clause which denies payment until the limits of liability or portion thereof under all bodily injury liability insurance policies applicable to the underinsured motor vehicle and its operators have been partially or fully exhausted by payment of judgment or settlement." If an exhaustion

4

provision is in effect and the tortfeasors' insurance policies are not exhausted by payment of judgment or settlement, a plaintiff "simply cannot require defendant to unwillingly arbitrate the insurance claim." *Lemna v. United Services Automobile Association*, 273 Ill.Ap.3d 90, 93-94 (3rd Dist. 1995).

In *Lemna*, plaintiff was involved in an automobile collision with a vehicle driven by Catherine Watson. 273 Ill.App.3d at 91. Ms. Watson was insured through State Farm Insurance Company, which issued a policy with bodily injury limits of $25,000 per person. *Id*. Plaintiff made demands for the limits of the State Farm policy but, however, State Farm refused to tender any amount. *Id*. The plaintiff's claim against Ms. Watson was in litigation when she made a claim against her own insurance carrier for underinsured motorist benefits. *Id*. Plaintiff's insurance carrier refused to pay any underinsurance benefits under its policy and also refused to arbitrate the matter prior to plaintiff receiving benefits under the State Farm policy. *Id*. Plaintiff's policy contained a provision which provided that it would "pay only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements unless we have been given written notice of a tentative settlement and decide to advance payment to the covered person in an amount equal to that settlement or we and a covered person have reached a settlement agreement." *Id*.

The *Lemna* court noted that the purpose of the underinsured motorist statute is to place an insured in the same coverage position he or she would have occupied if the tortfeasor had carried adequate insurance. 273 Ill.App.3d at 92. Consequently, underinsured motorist provisions do not become applicable unless the limits of the tortfeasors' insurance policies are lower than the limits of the injured person's insurance policy. *Id*. In *Lemna*, it was undisputed that the tortfeasor's insurance policy was not exhausted by payment or settlement. *Id*., at 93. Therefore,

5

the court held that plaintiff simply could not require the defendant to unwillingly arbitrate the underinsurance claim. *Id.*, at 93-94. The court held that Plaintiff cannot proceed to arbitration against the defendant at that point. *Id.*, at 94.

The instant matter is eerily similar to *Lemna*. In the instant matter, Nationwide's uninsured motorist coverage is inapplicable at the present time as a matter of law as Plaintiff has not alleged that the limits of defendant Ito <u>and</u> defendant Kuter's insurance policies are lower than the limits of Plaintiff's insurance policy. Moreover, it is undisputed that the defendant Kuter's insurance policy was not exhausted by payment or settlement. Plaintiff settled her underlying lawsuit with defendant <u>Ito</u> only. Defendant Kuter is still a defendant in a lawsuit filed by Plaintiff and the lawsuit is still being litigated. Because the *Kuter* lawsuit is still pending, Plaintiff cannot require Nationwide to arbitrate this claim at the present time. Plaintiff's Complaint must, therefore, be dismissed for failure to state a claim upon which relief can be granted.

**B.**       **Plaintiff's Complaint must be dismissed because she can submit to arbitration pursuant to Illinois law, 215 ILCS 5/143a, and pursuant to the Nationwide insurance policy.**

Even if Plaintiff's demand to compel arbitration is not premature, Plaintiff's Complaint is unnecessary, as Plaintiff could have submitted her claim to arbitration pursuant to Illinois law and the provisions of the Nationwide insurance policy. For instance, the Illinois Insurance Code, 215 ILCS 5/143a provides, in relevant part, as follows:

> **Upon the insured requesting arbitration, each party to the dispute shall select an arbitrator and the 2 arbitrators so named shall select a third arbitrator. If such arbitrators are not selected within 45 days from such request, either party may request that the arbitration be submitted to the American Arbitration Association.**

The Nationwide insurance policy contains a similar provision:

6

> **After written demand for arbitration by the insured, each party will select a competent arbitrator. The two so selected will select a third.**
>
> **If these arbitrators are not selected within 45 days after the written demand for arbitration by the insured, either party may request that arbitration be submitted to the American Arbitration Association.**

See Exhibit A to Plaintiff's Complaint, pg. U4.

Assuming, *arguendo*, that arbitration is required under the circumstances, which it is not, Plaintiff could pursue arbitration through the American Arbitration Association. The alleged failure of Nationwide to timely name an arbitrator is expressly addressed by the Illinois Insurance Code and by the Nationwide insurance policy; these provisions provide an avenue to a party demanding uninsured motorist arbitration to submit the matter to the American Arbitration Association. Here, Plaintiff pays no attention to that provision of the Nationwide policy. Plaintiff does not allege that any attempt was made by Plaintiff to pursue arbitration through the American Arbitration Association. Plaintiff has failed to exhaust the very remedy in the Nationwide policy which addresses the opposing party's failure to name an arbitrator. Plaintiff has never requested that this claim be submitted to the American Arbitration Association. Instead, Plaintiff filed the instant lawsuit and has caused Nationwide to incur significant time and expense in defense. Plaintiff's Complaint must be dismissed as her remedy is to submit the claim, assuming it was appropriate, to the American Arbitration Assocation.

## IV.    Conclusion

For these reasons, the Defendant, Nationwide Insurance Company of America, respectfully requests that this Court dismiss the Plaintiff's Complaint for failure to state a cause of action and for any further relief to which this Court may deem just and appropriate.

WHEREFORE, Defendant NATIONWIDE INSURANCE COMPANY OF AMERICA respectfully requests that this Court grant its motion to dismiss pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure, enter an order dismissing Plaintiff's claims with prejudice, and

for any other relief this Court deems just and proper, including reasonable costs and attorneys'

fees expended by this defendant.

ORAL ARGUMENT REQUESTED.

Respectfully Submitted,

By:    /s/ Mario M. Iveljic
One of the attorneys for the Defendant
Nationwide Insurance Company of America

David E. Kawala ARDC# 6191156
Mario M. Iveljic, ARDC# 6280267
Swanson, Martin & Bell, LLP
330 N. Wabash, Suite 3300
Chicago, IL 60611
(312) 321-9100
(312) 321-0990 FAX
dkawala@smbtrials.com
miveljic@smbtrials.com

**JUDITH M. BRAWKA**

07-701-3624

**NOTICE**

BY ORDER OF COURT THIS CASE IS HEREBY
SET FOR CASE MANAGEMENT CONFERENCE
BEFORE THE ABOVE NAMED JUDGE
ON ~~AUG-7~~ , AT ~~9~~ A.M., P.M.
FAILURE TO APPEAR MAY RESULT IN THE
CASE BEING DISMISSED OR AN ORDER OF
DEFAULT BEING ENTERED.

STATE OF ILLINOIS          )
                           ) SS
COUNTY OF KANE             )

FILED
ENTERED
2008 MAY 22 P 2: 31
DEBORAH SEYLLER
CIRCUIT COURT CLERK
KANE COUNTY, IL

IN THE CIRCUIT COURT OF SIXTEENTH JUDICIAL CIRCUIT
KANE COUNTY, ILLINOIS

| | |
|---|---|
| ADORACION PANTALEON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. |
| vs. | ) |
| | ) |
| NATIONWIDE INSURANCE COMPANY OF | ) |
| AMERICA, | ) |
| | ) |
| Defendants. | ) |

'08 L 278

## COMPLAINT AT LAW

NOW COMES the Plaintiff ADORACION PANTALEON by and through her Attorneys
the Law Firm of NEWMAN RAIZ, LLC, and in support of her Complaint at Law against the
Defendant NATIONWIDE INSURANCE COMPANY OF AMERICA states and alleges as
follows:

### GENERAL ALLEGATIONS

1.    On April 10, 2007, and at all times relevant hereto, the Plaintiff ADORACION A.
PANTALEON ("PANTALEON") was resident of the City of Montgomery, State of Illinois.

2.    On April 10, 2007, and at all times relevant hereto, the Defendant NATIONWIDE
INSURANCE COMPANY OF AMERICA ("NATIONWIDE") was an insurance company
licensed and doing business in the State of Illinois.

3.    On April 10, 2007, and at all times relevant hereto, the Defendant NATIONWIDE
was the automobile liability insurer for the Plaintiff PANTALEON, under policy number 91 12
C 816481 ("the Nationwide policy"). A copy of the specimen policy for the Nationwide policy
is attached as Exhibit "A."

NEWMAN RAIZ, LLC

1

**EXHIBIT**

tabber

A

4.      On April 10, 2007, Plaintiff was involved in a crossover style motor vehicle accident with a vehicle operative by Yasuo Ito ("the tortfeasor") on Interstate 88 near milepost 116, in the Township of Aurora, County of Kane, for which Plaintiff sustained personal injuries.

5.      On April 24, 2007, Plaintiff sent correspondence to the Nationwide Insurance Company, providing notice of her claim seeking recovery for underinsured motorist benefits under the Nationwide policy.  See Exhibit "B" (including proof of receipt via certified mail).

6.      On April 10, 2007 and at all times relevant hereto, Yasuo Ito was insured under a policy of insurance with the American Family Insurance Company ("the tortfeasor policy"), with policy limits in the amount of $100,000.00.  A copy of the declaration page of the tortfeasor policy is attached as Exhibit "C."

7.      That pursuant to a lawsuit as filed against the tortfeasor, the American Family Insurance Company agreed to tender to Plaintiff the policy limits of the tortfeasor policy limits, in the amount of $100,000.00, in settlement of Plaintiff's claims with the tortfeasor.

8.      That on January 5, 2008, the Defendant NATIONWIDE granted authority to the Plaintiff to accept the settlement offer of the tortfeasor, waiving its subrogation rights against the tortfeasor.  See correspondence of January 5, 2008, attached as Exhibit "D."

10.     That on January 10, 2008, the Honorable Judge Judith Brawka granted Plaintiff's motion for good faith finding of settlement as to the tortfeasor.  The order of January 10, 2008 is attached as Exhibit "E."

11.     That the American Family Insurance Company on behalf of the tortfeasor has tendered the policy limits of $100,000.00 to Plaintiff.

NEWMAN RAIZ, LLC

12.    That on March 4, 2008, in supplement to its prior request for benefits under the Nationwide policy, Plaintiff notified Defendant of its arbitrator for purposes of disposition of her underinsured motorist claim.  See Exhibit "F."

13.    That on March 10, 2008, Plaintiff provided medical records to Nationwide pursuant to the demand contained in its correspondence of January 5, 2008.  A copy of the cover letter of Plaintiff's March 10, 2008 correspondence is attached and labeled as Exhibit "G."

14.    That on March 10, 2008, Plaintiff agreed to provide the necessary authorization(s) to Nationwide to the extent that they required additional medical records.  See Exhibit "G."

15.    Not having heard from Nationwide regarding its selection of arbitrator, on May 5, 2008, Plaintiff again requested that the Defendant NATIONWIDE disclose its arbitrator for the purposes of proceeding forward with its underinsured motorist claim.  See Exhibit "H."

16.    That to date, the Defendant NATIONWIDE has not informed Plaintiff of its arbitrator.

17.    That to date, Plaintiff has not received from Defendant any declinations of coverage or reservations of rights under the policy.

18.    That Plaintiff has complied with all conditions precedent under the policy.

## COUNT I – DECLARATORY JUDGMENT
## ACTION TO COMPEL ARBITRATION

1-18.    Plaintiff incorporates and restates the allegations contained in paragraphs 1 through 18 of the General Allegations, as paragraphs 1 through 18 of this Count I, as though fully set forth therein.

19.    That the Nationwide policy states *inter alia*:

**Uninsured Motorists** (for bodily injury caused by uninsured or underinsured motorists)

\*   \*   \*

NEWMAN RAIZ, LLC

3

**Coverage Agreement**
**YOU AND A RELATIVE**

We will pay compensatory damages, including derivative claims, which are due by law to you or a relative from the owner or driver of an **uninsured motor vehicle** because of **bodily injury** suffered by **you** or a **relative**.

*   *   *

DEFINITIONS ...

1. An **uninsured motor vehicle** is: ...

b) one which is underinsured. This is a **motor vehicle** for which bodily injury liability coverage or bonds are in effect; however, their total amount is less than the limits of this coverage.

*   *   *

**Arbitration**

If we and the **insured** disagree about the right to recover damages or the amount of such damages:

1. After written demand for **arbitration by the insured**, each party will select a competent **arbitrator**. The two so selected will select a third.

    20.    That Plaintiff has requested that Nationwide name its arbitrator for purposes of an uninsured motorist arbitration.

    21.    That to date the Defendant NATIONWIDE has not named its arbitrator.

    22.    This Count I seeks the declaratory judgment of this Court as to the rights, and obligations of the parties to a contract of insurance. No money judgment is sought.

    23.    An actual controversy exists between Plaintiff PANTALEON and the Defendant NATIONWIDE hereto, and, by the terms and provisions of Section 2-701 of the Illinois Compiled Statutes, 735 ILCS 5/2-701, this Court is vested with the power to declare and adjudicate the rights and liabilities of the parties hereto, and to give such other and further relief as it deems necessary under the facts and circumstances herein.

NEWMAN RAIZ, LLC

4

WHEREFORE, Plaintiff respectfully requests this Honorable Court to declare and compel the Defendant NATIONWIDE to name its arbitrator pursuant to the terms of the Nationwide policy of insurance and for any and all other relief as this Honorable Court deems fair and just.

## COUNT II – VIOLATION OF 215 ILCS 5/155

1-21.    Plaintiff incorporates and restates the allegations contained in paragraphs 1 through 21 of Count I, as paragraphs 1 through 21 of this Count II, as though fully set forth therein.

22.    That at all times relevant there was in force a statute in the State of Illinois, known as 215 ILCS 5/155, that stated *inter alia*:

§ 155. Attorney fees

(1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and its appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:
(a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
(b) $60,000.00;
(c) the excess of the amount which the court of jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

23.    That since April 24, 2007, the Defendant NATIONWIDE has been on notice of Plaintiff's demand for underinsured motorist benefits.

24.    That the Defendant NATIONWIDE has been kept apprised of the status of the underlying action against the tortfeasor during the pendency of the action against the tortfeasor. See letter of September 20, 2007 for which Nationwide was provided a carbon copy. See cover letter of September 20, 2007 correspondence attached as Exhibit "I."

NEWMAN RAIZ, LLC

5

25.    That as late as January 5, 2008, the Defendant NATIONWIDE knew that the policy limits for the tortfeasor were exhausted. See Exhibit "D."

26.    That on March 4, 2008, not having heard from the Defendant NATIONWIDE, Plaintiff again asserted her demand for underinsured motorist benefits, naming her arbitrator and specifically requesting that the Defendant NATIONWIDE disclose its arbitrator pursuant to the terms of the Nationwide policy. See Exhibit "F."

27.    That having waited more than two months without a response from the Defendant NATIONWIDE, on May 5, 2008, Plaintiff once again asserted her demand for underinsured motorist benefits, naming her arbitrator and specifically requesting that the Defendant NATIONWIDE disclose its arbitrator pursuant to the terms of the Nationwide policy within the next seven days.  See Exhibit "H" with proof of facsimile transmission.

28.    That to date Plaintiff has not received disclosure of an arbitrator for purposes of the underinsured motorist arbitration, nor has Plaintiff been advised that such arbitrator would not be appointed pursuant to a denial or reservation of rights of coverage.

29.    That in failing to timely provide or allow for the administration of benefits under the policy, including but not limited to naming its arbitrator as required under the terms of the Nationwide policy of insurance, the Defendant NATIONWIDE has vexatiously and unreasonably delayed the administration of Plaintiff's claim.

WHEREFORE the Plaintiff ADORACION PANTALEON respectfully requests that judgment be entered in favor of the Plaintiff and against the Defendant in an amount as prescribed under 215 ILCS 5/155, for reasonable attorney fees and costs, and for any and all

NEWMAN RAIZ, LLC

other relief as this Honorable Court deems fair and just.

Respectfully Submitted,
NEWMAN RAIZ, LLC

By: _____
Michael J. Raiz

Michael J. Raiz - 6220425
NEWMAN RAIZ, LLC
40W310 LaFox Road, Suite J2
St. Charles, Illinois  60175
(630) 978-7716

# EXHIBIT A



2913600018109B

91 12 C 818481

# *Your Nationwide® Auto Policy*



Nationwide Insurance Companies, Home Office: One Nationwide Plaza, Columbus, Ohio 43215-2220

# *Table Of Contents*

**Page**

INSURING AGREEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . D1
DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . D1
INSURED PERSONS' DUTIES AFTER AN ACCIDENT OR LOSS . . . . . . . . D2
TERRITORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . D2
COVERAGES:

**Physical Damage** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . P1–P6
(damage to your auto)

Comprehensive
Collision
Towing and Labor

**Auto Liability** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L1–L5
(for damage or injury to others caused by your auto)

Property Damage and Bodily Injury

**Medical Payments** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . M1–M4
(medical expenses payable regardless of fault)

**Uninsured Motorists** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . U1–U6
(for bodily injury caused by uninsured and underinsured motorists)

## GENERAL POLICY CONDITIONS

How Your Policy May Be Changed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . G1
Optional Payment of Premium in Installments . . . . . . . . . . . . . . . . . . . . . . . . . G1
Renewal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . G1
Non-Renewal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . G1
Cancellation During Policy Period . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . G1
Dividends . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . G2
If You Become Bankrupt . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . G3
Unauthorized Use of Other Motor Vehicles . . . . . . . . . . . . . . . . . . . . . . . . . . . . G3
Fraud and Misrepresentation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . G3
Legal Action Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . G4
Subrogation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . G4
Non-Sufficient Funds and Late Payment Charges . . . . . . . . . . . . . . . . . . . . . . . G4

## MUTUAL POLICY CONDITIONS

Nationwide Mutual Insurance Company
Nationwide Mutual Fire Insurance Company . . . . . . . . . . . . . . . . . . . . . . . . . . . . G4

V-012-A

# Insuring Agreement

For the policyholder's payment of premiums and fees in amounts we require and subject to all of the terms and conditions of this policy, we agree to provide the coverages the policyholder has selected. These selections are shown in the enclosed Declarations, which are a part of this policy contract. The selected coverages in this policy apply only to occurrences while this policy is in force. Renewal premiums for terms of six months each must be paid in advance.

# Definitions

This policy uses certain common words for easy reading. They are defined as follows:

1. "POLICYHOLDER" means the first person named in the Declarations. The policyholder is the named insured under this policy but does not include the policyholder's spouse. If the first named insured is an organization, that organization is the policyholder.

2. "YOU" and "YOUR" mean:
   a) the policyholder and spouse, if resident of the same household, when the policyholder is a person; or
   b) the sole proprietor or majority shareholder of an organization, or general partner of a family limited partnership, as shown in the Declarations, and spouse, if resident of the same household, when the policyholder is an organization.

3. "RELATIVE" means one who regularly resides in your household and who is related to you by blood, marriage or adoption (including a ward or foster child). A relative may live temporarily outside your household.

4. "INSURED" means one who is described as entitled to protection under each coverage.

5. "WE," "US," "OUR," and "THE COMPANY" mean or refer to the company issuing the policy–Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company, Nationwide Property and Casualty Insurance Company, or Nationwide General Insurance Company.

6. "YOUR AUTO" means the vehicle(s) described in the Declarations.

7. "MOTOR VEHICLE" means a land motor vehicle designed primarily to be driven on public roads. This does not include vehicles operated on rails or crawler treads. Other motorized vehicles designed for use mainly off public roads shall be included within the definition of motor vehicle when used on public roads.

8. "PRIVATE PASSENGER AUTO" means a four-wheel:
   a) automobile for private passenger use;
   b) van; or
   c) pickup truck having either four or six wheels.

9. "DEDUCTIBLE" means the amount of loss to be paid by the insured. We pay for covered loss above the deductible amount shown in the Declarations.

10. "OCCUPYING" means in, upon, entering, or alighting from.

11. "BODILY INJURY" means:
    a) bodily injury;
    b) sickness;
    c) disease; or
    d) death;
    of any person.

12. "PROPERTY DAMAGE" means:
    a) destruction of property;

*Insuring Agreement*

b) damage or injury to it; and
c) loss of its use.

Other words are also defined. All defined words are in bold print.

# Insured Persons' Duties After an Accident or Loss

The insured will:

1. give us or our agent prompt notice of all losses and provide written proof of claim if required.

2. notify the police of all theft losses as soon as practicable.

3. promptly deliver to us all papers dealing with any claims or suits.

4. submit to examinations under oath as often as reasonably requested by us.

5. assist us with any claim or suit.

6. if injured, submit to examinations by company-selected physicians as often as the company reasonably requires. The injured person must grant us authority, at our request, to obtain copies of wage and medical records.

7. protect damaged property insured under this policy and make it available to us for inspection before its repair or disposal.

8. provide all records and documents we reasonably request and permit us to make copies.

# Territory

The policy applies in Canada, the United States of America and its territories or possessions, or between their ports.   All coverages except Uninsured Motorists apply to occurrences in Mexico, if within 50 miles of the United States boundary.  We will base the amount of any Comprehensive or Collision loss in Mexico on cost at the nearest United States point.

**NOTE:** You will need to buy auto insurance from a Mexican insurance company—regardless of coverage provided by this policy—before driving in Mexico.  Otherwise, you may be subject to jail detention, auto impoundment, and other legal complications in case of an accident.



# *Physical Damage*
## (damage to your auto)

## ADDITIONAL DEFINITIONS APPLICABLE TO THESE COVERAGES

For purposes of these coverages only:

1. "LOSS" means direct and accidental loss or damage to your auto. Your auto includes its equipment.

2. "EQUIPMENT" means anything usual and incidental to the use of a motor vehicle as a motor vehicle. Any type of trailer is not equipment.

# *Coverage Agreements*

## COMPREHENSIVE COVERAGE

1. We will pay for loss to your auto not caused by collision or upset. We will pay for the loss less your deductible. Coverage is included for:

   a) damage from contact with:

      (1) animals; or

      (2) falling or flying objects.

   b) broken glass:

      (1) even if caused by collision or upset; and

      (2) if you do not have Collision coverage.

   If your Comprehensive and Collision coverages have different deductibles, the smaller deductible will apply to broken glass.

   For damage to your auto's windshield, we may offer to have it repaired in lieu of replacement. We will not apply a deductible for the repair of the windshield. However, if the repair is not satisfactory, we will replace the windshield subject to your deductible.

2. Also, if your auto has a loss under this coverage we will:

   a) pay for resulting damage to your clothing and luggage or that of any relative. Maximum payment is $200. We will pay for stolen clothing or luggage only if your auto is stolen.

   b) repay your travel costs after your auto is stolen. Maximum payment is $15 per day—not to exceed $450 per occurrence. These costs must be incurred within a certain time. It starts 48 hours after you report the theft to us and the police. It ends when your auto is returned to you or a settlement is agreed to.

   c) repay you for the cost of travel from where your auto was disabled to where you were going. Maximum payment is $10.

## COLLISION COVERAGE

1. We will pay for loss to your auto caused by collision or upset. We will pay for the loss less your deductible. We will not subtract the deductible amount for broken glass if you have full (no deductible) Comprehensive coverage in force.

2. Also if your auto has a loss under this coverage we will:

   a) pay for resulting damage to your clothing and luggage or that of any relative. Maximum payment is $200.

   b) repay you for the travel cost to where you were going. Maximum payment is $10.

*Physical Damage* _____

## TOWING AND LABOR COSTS COVERAGE

We will pay towing and labor costs if your auto is disabled. We will pay only for labor costs at the place where your auto is disabled. Our maximum payment per disablement is shown in the Declarations.

# *Coverage Extensions*

### USE OF TRAILERS

The insurance on your auto covers a trailer used by you or a relative.

1. The trailer must be:
   a) designed for use with a private passenger auto; and
   b) used with a vehicle that is insured under these coverages.
2. The trailer must not be:
   a) otherwise insured;
   b) owned by you or a relative; or
   c) used for business purposes with a vehicle that's not a private passenger auto.
3. The maximum amount payable is $500.

### USE OF OTHER MOTOR VEHICLES

The insurance on your auto also covers other motor vehicles as follows:

1. A motor vehicle you do not own, while it is used in place of your auto for a short time. Your auto must be out of use because of:
   a) breakdown;
   b) repair;
   c) servicing; or
   d) loss.
2. A four-wheel motor vehicle newly acquired by you. You must report the acquisition of the vehicle to us during the first 30 days you own the vehicle. Also, if the newly acquired vehicle does not replace your auto, all household vehicles owned by you must be insured by us or an affiliate for this extension of coverage to apply.

   We provide this coverage only if you do not have other collectible insurance. You must pay any added premium resulting from this coverage extension.
3. A private passenger auto owned by a non-member of your household and not covered in item 1. of this section.
   a) This applies only while such auto is operated by you or a relative.
   b) We will not pay for loss:
      (1) that results from the operation of an auto:
         (a) repair shop;
         (b) public garage or parking place;
         (c) sales agency; or
         (d) service or maintenance facility.
      (2) involving a private passenger auto owned by an employer of an insured.
      (3) involving a private passenger auto furnished or available to you or a relative for regular use.
      (4) to any rented motor vehicle.

*Physical Damage*

4. A rented private passenger auto, including its loss of income.
   a) This applies only:
      (1) while such auto is rented by you or a relative;
      (2) if such auto is rented from a rental company for less than 28 days; and
      (3) for loss of income that is:
         (a) verifiable by us; and
         (b) owed to a rental company because:
            (1) the rental company had a customer willing to rent a private passenger auto; and
            (2) there was no other vehicle available for rental in place of the damaged rented auto.
   b) We will not pay for loss involving a private passenger auto rented or leased by anyone for or on behalf of the employer of an insured.

# Coverage Exclusions

We will not pay for loss:

1. To more than one:
   a) recording tape;
   b) compact disc; or
   c) other recording media.
2. To a container to be used for storing or carrying:
   a) recording tapes;
   b) compact discs; or
   c) other recording media.
3. To any device which is a:
   a) tape player;
   b) compact disc player or recorder;
   c) digital video disc player or recorder;
   d) video cassette player or recorder;
   e) television;
   f) electronic navigational system;
   g) citizens band radio;
   h) two-way mobile radio;
   i) telephone; or
   j) any other device which records, emits, amplifies, receives and/or transmits sound, pictures, or data.

However, this exclusion (3.) does not apply:
   a) to such a device, its antenna or its other parts or accessories if permanently installed by the original manufacturer or new car dealer as part of the purchase agreement for the vehicle; or
   b) up to the first $1,500 of the actual cash value of any and all such devices, antennas, or other parts and accessories that are permanently installed but were not a part of the new car purchase agreement for the vehicle. However, payment under this subpart b) shall not exceed the actual cash value of the insured vehicle in which the devices are installed.

Permanently installed means installed, using bolts, brackets, or welding, in a location designated by an auto manufacturer for such a device. A device attached only by wires is not "permanently installed." No coverage will be provided for any item that is not permanently installed. No coverage

*Physical Damage*

will be provided for the devices designed to detect or deter speed monitoring equipment excluded in exclusion 4. below, whether permanently installed or not.

4. To scanning monitor receivers used for radar detection, or any other device designed to detect or deter the monitoring of speed.

5. To a camper or living quarters unit which can be mounted on or attached to a vehicle.  We will pay the loss if:

    a)  the unit is reported to us; and

    b)  the required premium is paid;

   before the loss.

6. Caused by and limited to:

    a)  wear and tear;

    b)  freezing;

    c)  mechanical or electrical breakdown or failure.

   This exclusion (6.) does not apply to Towing and Labor coverage.

7. To any motor vehicle while used:

    a)  to carry persons or property for a fee; or

    b)  for retail or wholesale delivery, including but not limited to pizza, magazine, newspaper and mail delivery.

   This exclusion does not apply to motor vehicles used in shared-expense car pools.

8. To any motor vehicle due to an act of war.

9. To your auto which occurs:

    a)  while your auto  is being used in any illegal trade or transportation by:

        (1)  you;

        (2)  a relative; or

        (3)  anyone else with your knowledge or permission; or

    b)  due to confiscation of your auto by any law enforcement agency because of your auto's use in such activities.

10. Caused intentionally by or at the direction of you or a relative, including willful acts the result of which that person knows or ought to know will follow from their conduct.

   However, this exclusion does not apply to an insured who is the victim of domestic abuse or domestic violence provided that such an insured:

    a)  files a police report and cooperates with any law enforcement investigation; and

    b)  did not  cooperate or contribute in any way to the creation of the loss to your auto.

   We reserve the right of subrogation against an insured who commits an act of domestic abuse or domestic violence that results in damage to your auto.

11. To your auto while rented or leased to others.

12. To your auto while used in any prearranged or organized competitive event, including but not limited to drag racing, or in practice or preparation for such an event.

13. To your auto or any other motor vehicle due to diminution in value or depreciation.

14. Caused by or resulting from nuclear hazard, meaning any:

    a)  nuclear reaction;

    b)  nuclear discharge;

*Physical Damage*

c) radiation; or

d) radioactive contamination;

whether controlled or uncontrolled or however caused, or as a consequence of any of these. Loss caused by nuclear hazard is not considered loss caused by smoke or explosion.

# Limits and Conditions of Payment

## ACTUAL CASH VALUE

The limit of our coverage is the actual cash value of your auto or its damaged parts at the time of loss. To determine actual cash value, we will consider:

1. fair market value;

2. age; and

3. condition of the property;

at the time of loss. In addition to our payment of the loss, necessary and reasonable towing and storage will be paid to protect the auto from further damage. Covered storage costs are not to exceed four days of storage charges incurred prior to the date you report the loss to us.

## LOSS SETTLEMENT

At our option, we may:

1. pay you directly for a loss;

2. pay to repair or replace your auto or its damaged parts with the parts furnished either by original equipment manufacturers or non-original equipment manufacturers;

3. return stolen property at our expense and pay for any damage.

If you select an auto glass repair or replacement facility, we may limit our payment based on a competitive price. A competitive price is to be established by us through competitive bids or market surveys to determine a fair and reasonable market price for similar services.

## AMOUNTS PAYABLE FOR TOWING AND LABOR COSTS

The limit of our coverage for a loss is limited to the amount shown in the Declarations. Limits apply as stated in the Declarations. Insuring more than one person or vehicle under this policy does not increase our limits.

## OTHER INSURANCE

If you have other insurance that covers any loss, we will pay only our share of the loss. Our share is our proportion of the total insurance collectible for the loss. For loss to motor vehicles other than your auto, we will pay only the insured loss not covered by other insurance or self insurance.

## APPRAISAL

Both the policyholder and we may demand appraisal of the loss.

Each will:

1. appoint and pay a competent and disinterested appraiser; and

2. equally share other appraisal expenses.

Any fees of expert witnesses or attorneys will be paid by the party who hires them.

The appraisers, or a judge of a court having jurisdiction, will select an umpire to decide any differences. Each appraiser will state separately the actual cash value and the amount of loss.

An award in writing by any two appraisers will determine the amount payable.

*Physical Damage* _____

# Coverage Condition

## AUTO RECOVERY

When an insured auto which has been stolen or abandoned is located, we have the right to take it into our care to keep it safe.

# Loss Payable Clause

This clause applies to the Comprehensive and Collision coverages provided by this policy. It protects the lienholder named in the policy Declarations.

Payment for loss will be made according to the interest of the policyholder and lienholder. At our option, payment may be made to both jointly, or to either separately. Either way, the company will protect the interests of both.

Protection of the lienholder's financial interest will not be affected by any change in ownership of the vehicle insured, nor by any act or omission by any person entitled to coverage under this policy. However, protection under this clause does not apply:

a) in any case of conversion, embezzlement, secretion, or willful damaging or destruction, of the vehicle committed by or at the direction of an insured.

b) to the loss of any motor vehicle while it is being used on a temporary or permanent basis, for the transportation of, or in exchange for, any illegal substance, or in connection with any criminal trade or transaction.

The company will not notify the lienholder each time you renew this policy, and we may cancel this policy according to the terms. We will protect the lienholder's interest for 10 days from the date we notify him that the policy has terminated, for any reason. If we pay the lienholder for any loss or damage suffered during that 10-day period, we have the right to recover the amount of any such payment from you. The company will also notify the lienholder if coverage under the policy is excluded for any named driver.

Any lienholder shown in the Declarations will receive notice of cancellation at least 30 days before protection of its interest will end for any reason other than non-renewal or nonpayment of premium. The notice will include the reason for the cancellation. A 10-day notice will be given for non-renewal or if the policy cancels for nonpayment of premium.

The lienholder shall notify the company upon learning of any change in ownership of the vehicle.

To the extent of payment to the lienholder, the company will be entitled to the lienholder's rights of recovery. The company will do nothing to impair the right of the lienholder to recover the full amount of its claim.

IF WE BECOME OBLIGATED TO REIMBURSE A LIENHOLDER UNDER THIS COVERAGE DUE TO YOUR FAILURE TO MEET THE POLICY REQUIREMENTS OR THROUGH YOUR FAILING TO MAKE YOUR PREMIUM PAYMENTS, WE HAVE THE RIGHT TO RECOVER FROM YOU ANY MONEY WE PAY.

# Assignability

No interest in these coverages can be transferred without our written consent. However, if the policyholder dies, they will stay in force for the rest of the policy period. They will apply for anyone having proper temporary custody of your auto.



# *Auto Liability*

<u>(for damage or injury to others caused by your auto)</u>

# *Coverage Agreement*

## PROPERTY DAMAGE AND BODILY INJURY LIABILITY COVERAGE

1. We will pay for damages for which you are legally liable as a result of an accident arising out of the:

   a) ownership;

   b) maintenance or use; or

   c) loading or unloading;

   of your auto. A relative also has this protection. So does any person or organization who is liable for the use of your auto while used with your permission.

2. Damages must involve:

   a) property damage; or

   b) bodily injury,

3. We will pay such liability losses up to the limits stated in the Declarations. In addition to these limits and as to any covered damages, we will:

   a) defend at our expense, with attorneys of our choice, any suit against the insured. We may settle or defend any claim or suit as we think proper.

   b) pay:

      (1) all expenses incurred by us; and

      (2) all costs levied against the insured;

      in any such suit.

   c) pay premiums:

      (1) of not more than $250 per insured for bail bonds required because of an accident or traffic violation.

      (2) for appeal bonds in defended suits and for bonds to release attached property. The amount of such bonds shall not be more than the limits of liability shown in the Declarations.

      Although paying such premiums, we are not required to apply for or furnish any bonds.

   d) pay post-judgment interest on all damages awarded. We will not pay interest that accrues after such time as we have:

      (1) paid;

      (2) formally offered; or

      (3) deposited in court;

      the amount for which we are liable under this policy.

   e) pay expenses incurred by an insured for emergency medical aid to others at the time of accident.

   f) pay all reasonable expenses incurred by an insured at our request, but not more than $50 per day for loss of earnings.

4. After the limits of this coverage have been paid, we will not defend any suit or pay any claim or judgment.

Auto Liability _____

# Coverage Extensions

## USE OF TRAILERS

1. This coverage applies to the use of a trailer by:

   a) you;

   b) a relative; or

   c) someone else with your permission.

2. The trailer must be:

   a) designed for use with a private passenger auto; and

   b) used with a vehicle that is insured under this coverage.

3. The trailer must not be used for business purposes with a vehicle that's not a private passenger auto.

## USE OF OTHER MOTOR VEHICLES

This coverage also applies to certain other motor vehicles as follows:

1. A motor vehicle you do not own, while it is used in place of your auto for a short time. Your auto must be out of use because of:

   a) breakdown;                    c) servicing; or

   b) repair;                       d) loss.

2. A four-wheel motor vehicle newly acquired by you. This coverage applies only during the first 30 days you own the vehicle unless it replaces your auto. If the newly acquired vehicle does not replace your auto, all household vehicles owned by you must be insured by us or an affiliate for this extension of coverage to apply.

   We provide this coverage only if you do not have other insurance. You must pay any added premium resulting from this coverage extension.

3. A motor vehicle owned by a non-member of your household and not covered in item 1. of this section.

   a) This applies only to policies issued to individual persons (not organizations) and while the vehicle is being used by you or a relative. It protects the user, and any person or organization, except as noted below in b), who does not own the vehicle but is legally responsible for its use.

   b) This does not apply to losses involving a motor vehicle:

      (1) used in the business or occupation of you or a relative except a private passenger auto used by you, your chauffeur, or your household employee;

      (2) owned, rented or leased by an employer of an insured;

      (3) rented or leased by anyone for or on behalf of an employer of an insured; or

      (4) furnished to you or a relative for regular use. Furnished for regular use does not include a motor vehicle rented from a rental company for less than 28 days.

## FINANCIAL RESPONSIBILITY

We will adjust this policy to comply:

1. With the financial responsibility law of any state or province which requires higher liability limits than those provided by this policy.

2. With the kinds and limits of coverage required of non-residents by any compulsory motor vehicle insurance law, or similar law.

However, any loss payment under this coverage will be made only over and above any other collectible motor vehicle insurance. In no case will anyone be entitled to duplicate payments for the same loss.

When we certify this policy as proof under any financial responsibility law, it will comply with the law to the extent of the coverage required by the law. The insured agrees to reimburse us for any payment which we would not have been obligated to make under the terms of this policy except for the agreement outlined in this paragraph.

# Coverage Exclusions

This coverage does not apply to:

1. Property damage or bodily injury caused intentionally by or at the direction of an insured, including wilful acts the result of which the insured knows or ought to know will follow from the insured's conduct.

2. Use of any motor vehicle:

   a) to carry persons or property for a fee; or

   b) for retail or wholesale delivery, including but not limited to pizza, magazine, newspaper and mail delivery.

   This exclusion does not apply to motor vehicles used in shared-expense car pools.

3. a) Any person for any occurrence arising out of the operation of an auto:

   (1) repair shop;                      (3) sales agency; or
   (2) public garage or parking place;   (4) service or maintenance facility.

   b) However, this exclusion does not apply to:

   (1) you;

   (2) a relative; or

   (3) a partner, employee, or agent of you or a relative;

   with regard to the use of your auto.

4. Property damage caused by any insured:

   a) to a motor vehicle that is owned or operated by, or in the custody of, that insured; or

   b) to any other property that is owned by or in the custody of any insured or anyone occupying your auto. This exclusion does not apply to a:

   (1) rented home; or

   (2) rented private garage.

5. Bodily injury to any person eligible to receive any benefits required to be provided or voluntarily provided by any insured under a:

   a) workers' compensation;

   b) unemployment compensation;

   c) non-occupational or occupational disease;

   d) disability benefits;

   or any similar law.

6. Bodily injury to an employee of any insured while engaged in employment. However, it does cover an employee at your home who is not, or is not required to be, covered by any workers' compensation law.

7. The United States of America or any of its agencies. It also does not apply to any employee of the United States of America or any of its agencies while such person is acting within the scope of his or her office or employment and the provisions of the Federal Tort Claims Act apply.

8. Any person protected under nuclear energy liability insurance. This exclusion applies even if that insurance has been exhausted.

9. Bodily injury to you or a relative. However this exclusion does not apply:
   a) to the operation of your auto by any insured other than you or a relative; or
   b) when a third party acquires a right of contribution against you or a relative.

10. Bodily injury or property damage arising out of the ownership, maintenance or use of your auto while rented or leased to others by any insured.

11. Bodily injury or property damage arising out of the ownership, maintenance or use of your auto while used in any prearranged or organized competitive event, including but not limited to drag racing, or in practice or preparation for such an event.

# Limits and Conditions of Payment

## AMOUNTS PAYABLE FOR LIABILITY LOSSES

Our obligation to pay Property Damage or Bodily Injury Liability losses is limited to the amounts per person and per occurrence stated in the Declarations. The following conditions apply to these limits:

1. The limit shown:
   a) for Property Damage Liability is for all property damage in one occurrence.
   b) for Bodily Injury Liability for any one person is for all legal damages, including derivative claims, claimed by anyone arising out of and due to bodily injury to one person as a result of one occurrence.

   The per-person limit is the total amount available when one person sustains bodily injury, including death, as a result of one occurrence. No separate limits are available to anyone for derivative claims, statutory claims, or any other claims made by anyone arising out of bodily injury, including death, to one person as a result of one occurrence.
   c) for Bodily Injury Liability for each occurrence is the total limit of our liability for all legal damages when two or more persons sustain bodily injury, including death, as a result of one occurrence. No separate limits are available to anyone for derivative claims, statutory claims, or any other claims arising out of bodily injury, including death, to two or more persons as a result of one occurrence. This total limit is subject to the limit for any one person.

2. Liability limits apply as stated in the Declarations. The insuring of more than one person or vehicle under this policy does not increase our liability limits.

3. In any loss covered under items 2. and 3. of "USE OF OTHER MOTOR VEHICLES," the highest liability limit applicable to any one vehicle on this policy will apply.

4. A motor vehicle and attached trailer are considered one vehicle for Auto Liability coverage.

## OTHER INSURANCE

1. In any loss involving the use of your auto, we will be liable for only our share of the loss if there is other collectible liability insurance. Our share is our proportion of the total insurance limits for the loss.

2. For losses involving the use of motor vehicles, other than your auto, we will pay the insured loss not paid or payable by:
   a) insurance;

_Auto Liability_

b)  self insurance;

c)  proceeds from a governmental entity; or

d)  sources of recovery.

If more than one policy issued by us or an affiliated company applies on an excess basis to the same loss, we will pay only up to the highest limit of any one of them.

## Assignability

No interest in this coverage can be transferred without our written consent.  However, if the policyholder dies, the Liability coverage will continue in force for the rest of the policy period for:

1.  Anyone having proper temporary custody of your auto until a legal representative is appointed; and

2.  The appointed legal representative.





# Medical Payments

<u>(medical expenses payable regardless of fault)</u>

## ADDITIONAL DEFINITIONS APPLICABLE TO THIS COVERAGE

For purposes of this coverage only:

1. **"EXPERIMENTAL TREATMENT"** means medical treatment that is experimental in nature which is not accepted as effective therapy by:

   a) the state medical association or board;

   b) an appropriate medical specialty board;

   c) the American Medical Association;

   d) the Surgeon General; or

   e) the Federal Food and Drug Administration.

2. **"USUAL, CUSTOMARY AND REASONABLE CHARGES"** means charges for services or supplies covered under this policy, which are:

   a) usual and customary in the place where provided; and

   b) not more than what would have been charged if the injured person had no insurance; and

   c) not Experimental Treatment.

3. **"MEDICALLY NECESSARY"** means a service or procedure which is necessary, appropriate and consistent for the symptoms, diagnosis or treatment of a condition of injury or sickness within generally accepted current standards of good medical practice. The fact that any particular doctor may prescribe, order, recommend, or approve a service or procedure does not, in itself, make the service or procedure medically necessary.

4. **"UTILIZATION MANAGEMENT OR REVIEW"** means cost and utilization containment activities designed to determine usual, customary and reasonable charges for medically necessary services provided to an insured. These activities include, but are not limited to, medical bill auditing and case management.

## Coverage Agreement

We will pay usual, customary and reasonable charges:

1. for expenses incurred for:

   a) medically necessary services; or

   b) funeral costs;

   due to accidental bodily injury suffered by you or a relative while occupying your auto.

2. incurred within one year after the accident.

3. up to the limit stated in the policy Declarations.

4. regardless of who is at fault in the accident.

We may apply utilization management or review to determine:

1. usual, customary and reasonable charges; and/or

2. medically necessary services.

M1

*Medical Payments*_____

# *Coverage Extensions*

## YOU AND A RELATIVE

In addition, you and a relative are covered:

1. While occupying a motor vehicle you do not own, while it is used in place of your auto for a short time. Your auto must be out of use because of:

    a) breakdown;

    b) repair;

    c) servicing; or

    d) loss.

2. While occupying a four-wheel motor vehicle newly acquired by you. This coverage applies only during the first 30 days you own the vehicle, unless it replaces your auto. If the newly acquired vehicle does not replace your auto, all household vehicles owned by you must be insured by us or an affiliate for this extension of coverage to apply.

3. While occupying any other motor vehicle not owned by you or a relative.

4. As pedestrians if hit by any motor vehicle or trailer.

## OTHER PERSONS

Persons other than you and a relative are protected under this coverage:

1. While occupying you auto when it is being used by:

    a) you;

    b) a relative; or

    c) anyone else with your permission.

2. While occupying a motor vehicle you do not own, while it is used in place of your auto for a short time. Your auto must be out of use because of:

    a) breakdown;

    b) repair;

    c) servicing; or

    d) loss.

3. While occupying a four-wheel motor vehicle newly acquired by you. This coverage applies only during the first 30 days you own the vehicle, unless it replaces your auto. If the newly acquired vehicle does not replace your auto, all household vehicles owned by you must be insured by us or an affiliate for this extension of coverage to apply.

4. While occupying a motor vehicle that belongs to someone who is not a member of your household.

    a) This protection applies only:

        (1) when the vehicle is being used by you or a relative.

        (2) in policies issued to persons (not organizations).

    b) This protection does not apply to:

        (1) use of any vehicle in the business or occupation of you or a relative, except a private passenger auto used by:

            (a) you;

            (b) your chauffeur; or

            (c) your household employee.

        (2) use of a motor vehicle furnished to you or a relative for regular use.

## USE OF TRAILERS

1. This coverage applies to the use of a trailer by:
   a)  you;
   b)  a relative; or
   c)  someone else with your permission;
   regardless of who owns it.

2. The trailer must be:
   a)  designed for use with a private passenger auto; and
   b)  used with a vehicle that is insured under this coverage.

3. The trailer must not be used for business purposes with a vehicle that is not a private passenger auto.

# Coverage Exclusions

This coverage does not apply to:

1. Use of any motor vehicle by an insured:
   a)  to carry persons or property for a fee; or
   b)  for retail or wholesale delivery, including but not limited to pizza, magazine, newspaper and mail delivery.

   This exclusion does not apply to motor vehicles used in shared-expense car pools.

2. a)  Any person for any occurrence arising out of the operation of an auto:
   (1)  repair shop;
   (2)  public garage or parking place;
   (3)  sales agency; or
   (4)  service or maintenance facility.
   b)  However, this exclusion does not apply to the use of your auto by:
   (1)  you;
   (2)  a relative; or
   (3)  a partner, employee, or agent of you or a relative.

# Limits and Conditions of Payment

## BENEFITS PAYABLE

1. The amount payable under this coverage to or for one person in one accident is limited as stated in the policy Declarations. Limits apply to each insured vehicle as stated in the Declarations. The stated limit is not increased by the insuring of more than one person or vehicle under this policy or any other policy issued by us.

2. In any loss covered under "COVERAGE EXTENSIONS" and not involving your auto, the highest liability limit applicable to any one vehicle in this policy will apply.

## OTHER INSURANCE

We will pay only the insured benefit over and above the amount of other collectible auto Medical Payments or Family Compensation Insurance in any loss involving:

1. Use of a motor vehicle you do not own; or

2. Being hit by any motor vehicle or trailer.

*Medical Payments*

## DUPLICATE PAYMENT

We will make no duplicate payment to or for any insured for the same element of loss.

## OTHER CLAIMS AND JUDGMENTS

Any loss payment under this coverage will apply toward payment of any claim or judgment relating to the same loss under the Bodily Injury Liability coverage of this policy. The company will require written agreement to this condition before payment of a Medical Payments loss.

# *Assignability*

No interest in this coverage can be transferred without our written consent. However, if the policyholder dies, this coverage will stay in force for the rest of the policy period for those persons who were entitled to coverage at the time of death.



# Uninsured Motorists
### (for bodily injury caused by uninsured or underinsured motorists)

## ADDITIONAL DEFINITIONS APPLICABLE TO THIS COVERAGE

1. "ARBITRATION" means resolving questions in dispute.

2. "ARBITRATOR" means the party conducting the arbitration.

3. "UNINSURED MOTOR VEHICLE"--See definition in "COVERAGE AGREEMENT" section.

# Coverage Agreement
## YOU AND A RELATIVE

We will pay compensatory damages, including derivative claims, which are due by law to you or a relative from the owner or driver of an uninsured motor vehicle because of bodily injury suffered by you or a relative. Damages must result from an accident arising out of the:

1. ownership;

2. maintenance; or

3. use;

of the uninsured motor vehicle.

## OTHER PERSONS

We will also pay compensatory damages, including derivative claims, which are due by law to other persons who:

1. Are not a named insured or an insured household member for similar coverage under another policy; and

2. Suffer bodily injury while occupying:

   a) your auto.

   b) a motor vehicle you do not own, while it is used in place of your auto for a short time. Your auto must be out of use because of:
   (1) breakdown;
   (2) repair;
   (3) servicing; or
   (4) loss.

   c) a four-wheel motor vehicle newly acquired by you. This applies only during the first 30 days you own the vehicle, unless it replaces your auto.

   d) any other motor vehicle while it is being driven by you or a relative. This extension applies only in policies issued to persons (not organizations). However, the vehicle must not be:
   (1) owned by you or a relative; or
   (2) furnished to you or a relative for regular use.

*Uninsured Motorists*

## RECOVERY

1. Before recovery, we and the insured must agree on two points:

   a) whether there is a legal right to recover damages from the owner or driver of an uninsured motor vehicle; and if so,

   b) the amount of such damages.

   If agreement cannot be reached, the matter may go to arbitration. Refer to the ARBITRATION provisions.

2. The limits of coverage as shown in the Declarations are not subject to arbitration.

3. Any judgment against the uninsured will be binding on us only if:

   a) we have a reasonable opportunity to protect our interests; and

   b) it has our written consent.

   However, we may agree to be bound by the judgment if we have not received reasonable notice of the suit.

## DEFINITIONS

For purposes of this coverage only:

1. An uninsured motor vehicle is:

   a) one for which there is no bodily injury liability bond or insurance at the time of the accident.

   b) one which is underinsured. This is a motor vehicle for which bodily injury liability coverage or bonds are in effect; however, their total amount is less than the limits of this coverage. See the Declarations for those limits.

   c) one for which the insuring company denies coverage or becomes insolvent.

   d) a "hit-and-run" motor vehicle which causes bodily injury to an insured by physical contact with:

      (1) such person;

      (2) a vehicle the insured is occupying; or

      (3) another vehicle causing such vehicle to hit either (1) or (2) above.

   The driver and the owner of the "hit-and-run" vehicle must be unknown. A report must be made to the police within 24 hours. We must have a sworn statement within 30 days. It must state that the insured has a legal action due to the accident. It must include facts to support the action. We may inspect any vehicle the insured was occupying.

2. We will not consider as an uninsured motor vehicle:

   a) a motor vehicle that is "self-insured" under any law;

   b) any motor vehicle owned by any government unit or agency;

   c) any vehicle in use as a residence or premises;

   d) any equipment or vehicle designed for use mainly off public roads except while on public roads;

   e) any motor vehicle insured under the liability coverage of this policy; nor

   f) any vehicle owned by or furnished for the regular use of you or a relative unless it is your auto to which the Auto Liability of this policy applies and coverage is excluded for damages sustained in the accident.

_Uninsured Motorists_

# Coverage Exclusions

This coverage does not apply to:

1. Use of any motor vehicle:

    a) to carry persons or property for a fee; or

    b) for retail or wholesale delivery, including but not limited to pizza, magazine, newspaper and mail delivery.

    This exclusion does not apply to motor vehicles used in shared-expense car pools.

2. Use of any motor vehicle by an insured without the owner's permission.

3. Bodily injury of any insured if the insured settles, without our written consent, with a liable party.

4. Punitive or exemplary damages.

5. Directly or indirectly benefit any workers' compensation or disability benefits carrier, or any person or organization qualifying as a "self insurer" under a workers' compensation, disability benefits, or similar law.

6. Bodily injury suffered while occupying or struck by a motor vehicle owned by you or a relative, but not insured for Auto Liability coverage under this policy.

# Insured Persons' Duties

1. The insured must:

    a) submit written proof of the claim to us as soon as practicable. It must be under oath, if required. It must include details of:

       (1) the nature and extent of injuries;

       (2) treatment; and

       (3) any other facts which could affect the amount of payment.

    b) provide all facts of the accident and the names of all witnesses.

    c) answer questions under oath as often as we require.

    d) be examined by doctors chosen by us as often as we require. At our request, the injured person or his legal representative must promptly authorize us to:

       (1) speak with any doctor who has provided treatment;

       (2) read all medical history and reports of the injury;

       (3) obtain copies of wage and medical reports and records; and

       (4) obtain copies of all medical bills as they are incurred.

2. After notice of claim, we may require the insured to take legal action against any liable party.

3. An insured may bring legal action against the other party for bodily injury. A copy of any paper served in this action must be sent to us at once.

4. The insured must:

    a) obtain our written consent to:

       (1) settle any legal action brought against any liable party; or

       (2) release any liable party.

    b) preserve and protect our right to subrogate against any liable party.

# *Arbitration*

If we and the insured disagree about the right to recover damages or the amount of such damages:

1.  After written demand for arbitration by the insured, each party will select a competent arbitrator. The two so selected will select a third.

2.  If these arbitrators are not selected within 45 days after the written demand for arbitration by the insured, either party may request that arbitration be submitted to the American Arbitration Association.

3.  Each party will pay its chosen arbitrator. Each will pay half of all other expenses.

4.  Unless the insured and we agree otherwise, arbitration will take place in the county and state in which the insured lives. Arbitration will be subject to the usual rules of procedure and evidence in such county and state. The arbitrators will resolve the issues. Questions in dispute will be decided when two arbitrators agree.

5.  Any arbitration action against the company must begin within the time limits allowed for bodily injury or death actions in the state where the accident occurred.

6.  When used, arbitration of uninsured motorists claims is binding on the insured and the company only if the award is within the limits of state financial responsibility laws where your auto is principally garaged. If the award exceeds these limits, the company or the insured may demand a trial. This right must be used within 60 days after the award. Trial will be in a court of competent jurisdiction. Trial will be on all issues of the award including the amount within the financial responsibility limits.

7.  Judgment upon award may be entered in any proper court.

# *Trust Agreement*

This applies to the extent of any payment we make under this coverage. We will have first right to any amount the insured receives from any liable party. The insured will:

1.  Hold in trust for us his right to recover against any such party; and

2.  Furnish us all papers in any suit the insured files.

Our payment of a claim may result from the insolvency of an insurer. If so, we have the right to recover from the insurer, but not its insured.

# *Subrogation*

We have the right of subrogation under this coverage. This means that after paying a loss to you or others under this policy, we will have the insured's right to sue for or otherwise recover such loss from anyone else who may be liable.

These provisions will be applied in accordance with state law. Any insured will sign such papers, and do whatever else is necessary, to transfer these rights to us, and will do nothing to prejudice them.

However, we will not exercise any right of subrogation against an underinsured motorist if: (1) we have been given written notice of a settlement offer between our insured and the underinsured motorist or the underinsured motorist's insurer; and (2) we fail to advance payment to our insured, in an amount equal to the tentative settlement, within 30 days after we receive such notice.

# Limits and Conditions of Payment

## AMOUNTS PAYABLE FOR UNINSURED MOTORISTS LOSSES

Our obligation to pay Uninsured Motorists losses is limited to the amounts per person and per occurrence stated in the policy Declarations. The following conditions apply to these limits:

1. The limit shown:

   a) for bodily injury for any one person is for all covered damages, including all derivative claims, claimed by anyone arising out of and due to bodily injury, to one person as a result of one occurrence.

   The per-person limit is the total amount available when one person sustains bodily injury, including death, as a result of one occurrence. No separate limits are available to anyone for derivative claims, statutory claims, or any other claims made by anyone arising out of bodily injury, including death, to one person as a result of one occurrence.

   b) for bodily injury for each occurrence is the total limit of our liability for all covered damages when two or more persons sustain bodily injury, including death, as a result of one occurrence. No separate limits are available to anyone for derivative claims, statutory claims, or any other claims arising out of bodily injury, including death, to two or more persons as a result of one occurrence. This total limit is subject to the limit for any one person.

2. Coverage applies as stated in the Declarations. The insuring of more than one person or vehicle under this policy does not increase our Uninsured Motorists payment limits. In no event will any insured be entitled to more than the highest limit applicable under any policy issued by us.

3. The limits of this coverage or any amounts payable under this coverage, whichever are less, will be reduced by:

   a) any amount paid by or for any liable parties, including amounts paid or payable under the Bodily Injury Liability coverage of this policy.

   b) any sums paid or payable under any workers' compensation, disability benefits or similar laws. However, the limits of this coverage will not be reduced by amounts paid or payable for Social Security disability benefits.

   c) any sums paid or payable under the Illinois Basic or Excess Personal Injury Protection coverage of any policy.

4. Any payment to or for the insured under this coverage will be reduced by any amount paid or payable under the auto Medical Payments coverage in this policy, or under any benefits except confinement benefits of the Family Compensation coverage.

5. Any payment under this coverage to or for an insured will reduce the amount of damages the insured may be entitled to recover under the Bodily Injury Liability coverage of this policy.

6. We will not pay any underinsured motorists loss until the limits of all bodily injury liability coverage available from any source have been fully or partially exhausted by payment of settlements or judgments to the insured and other persons suffering bodily injury in the loss:

   a) agree that the insured has suffered bodily injury resulting from the negligent use of an underinsured motor vehicle; and

   b) without arbitration, agree on the amount of damages that the insured is legally entitled to collect. However, our maximum payment under such agreement shall not exceed the amount by which the limits of this coverage exceeds the limits of the bodily injury liability insurance of the owner or operator of the underinsured motor vehicle. Any such agreement shall be final and binding on both parties.

*Uninsured Motorists*

Such settlement agreement shall not be concluded unless the insured:

a) has fully complied with all terms of the policy; and

b) has filed suit against the owner or operator of the underinsured motor vehicle; and

c) before the conclusion of the settlement agreement:

    (1) has not abandoned the suit; or

    (2) settled the suit without preserving our right of subrogation.

## OTHER INSURANCE

1. If there is other insurance for bodily injury suffered by an insured while occupying a motor vehicle you do not own, we will pay the insured loss not covered by other insurance.

   However, this insurance will apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of the other insurance.

2. Except as stated above, if there is other insurance similar to this coverage under any other policy, we will be liable for only our share of the loss. Our share is our proportion of the total insurance limits for the loss.

3. In any event, if more than one policy applies, total limits applicable will be considered not to exceed the highest limits amount of any one of them.

## DUPLICATE PAYMENT

We will make no duplicate payment to or for any insured for the same element of loss.

# Assignability

No interest in this coverage can be transferred without our written consent. However, if the policyholder dies, this coverage will stay in force for the rest of the policy period. It will apply to anyone having proper custody of your auto.





# *General Policy Conditions*

We, you, and anyone insured by this policy are bound by and must comply with all the terms, conditions and obligations of the policy. The following are policy conditions:

1. **HOW YOUR POLICY MAY BE CHANGED**

   a) Any terms of this policy which may be in conflict with statutes of the state in which the policy is issued are hereby amended to conform.

   b) Any insured will automatically have the benefit of any extension or broadening of coverage in this policy, as of the effective date of the change, provided it does not require more premium.

   c) No other changes may be made in the terms of this policy except by endorsement or policy revision.

   d) The premium for each coverage is based on information in our possession. Any change or correction in this information will allow us to make an adjustment of the premium as of the date the change is effective.

   e) The policyholder has a duty to notify us as soon as possible of any change which may affect the premium or the risk under this policy. This includes, but is not limited to, changes in:

      (1) the principal garaging address of the insured vehicle(s), which must be reported to us within 30 days of the date the address change becomes effective;

      (2) drivers;

      (3) use of the insured vehicle(s); or

      (4) desired coverages, deductibles, or limits.

2. **OPTIONAL PAYMENT OF PREMIUM IN INSTALLMENTS**

   The policyholder may pay the premium for this policy in installments, under terms and conditions approved where required by the Department of Insurance. For each separate installment payment there is an installment service charge. Your agent can provide more information.

3. **RENEWAL**

   This policy is written for a six-month policy period. We will renew it for successive policy periods, subject to the following conditions:

   a) Renewal will be in accordance with policy forms, rules, rates and rating plans in use by us at the time.

   b) All premiums or premium installment payments must be paid when due, whether payable directly to us or through any premium finance plan.

   c) Prior to the expiration of a policy term for which premium has been paid, we will mail a notice to the policyholder for the premium required to renew or maintain the policy in effect. We will mail this notice to the address last known to us.

4. **NON-RENEWAL**

   a) At the end of each six-month policy period after the effective date of the policy, we will have the right to refuse to renew the entire policy. However, if this policy has been renewed for five or more years, without interruption, our right to non-renew is limited in accordance with Sections 143.19.1 or 143.19b of the Illinois Insurance Code.

   b) If we elect not to renew, we will mail written notice to the policyholder 30 days in advance of the date our action will take effect. Mailing of this notice to the last known address of the policyholder will be considered proof of notice.

   c) For non-payment of renewal premium, coverage will terminate at the end of the last policy period for which premium was paid.

## 5. CANCELLATION DURING POLICY PERIOD

   a) The policyholder may cancel this policy or any of its coverages by mailing notice to us of the future date of cancellation desired. We will retain premium for the days covered.

   b) Up to the time this policy or any coverage has been in effect 60 days, we have unlimited right of cancellation. We may cancel by mailing notice to the policyholder 30 days in advance of termination of coverage, unless we are cancelling for non-payment of premium. To cancel for non-payment we will mail notice to the policyholder 10 days in advance of termination of coverage. While the date we mail this notice must be within the 60 days, the date of termination need not be.

   c) After any coverage of this policy has been in effect 60 days, our right to cancel such coverage during the policy period is limited.

     (1) We may cancel if:

      (a) premiums or premium installment payments are not paid when due;

      (b) the policy was obtained through a material misrepresentation;

      (c) any insured violated any of the terms and conditions of the policy;

      (d) the named insured failed to disclose fully his motor vehicle accidents and moving traffic violations for the preceding 36 months if called for in the application;

      (e) any insured made a false or fraudulent claim or knowingly aided or abetted another in the presentation of such a claim;

      (f) the named insured or any other operator who either lives in your household or customarily operates a motor vehicle insured under this policy:

        (1) has, within the 12 months prior to the notice of cancellation, had his driver's license under suspension or revocation;

        (2) is or becomes subject to epilepsy or heart attacks, and such individual does not produce a certificate from a physician testifying to his unqualified ability to operate a motor vehicle safely;

        (3) has an accident record, conviction record (criminal or traffic), physical, or mental condition which is such that his operation of a motor vehicle might endanger the public safety;

        (4) has, within the 36 months prior to the notice of cancellation, been addicted to the use of narcotics or other drugs;

        (5) has been convicted or forfeited bail, during the 36 months immediately preceding the notice of cancellation, for any felony, criminal negligence resulting in death, homicide or assault arising out of the operation of a motor vehicle, operating a motor vehicle while in an intoxicated condition or while under the influence of drugs, being intoxicated while in, or about a motor vehicle or while having custody of a motor vehicle, leaving the scene of an accident without stopping to report, theft or unlawful taking of a motor vehicle, making false statements in an application for an operator's or chauffeur's license or has been convicted or forfeited bail for three or more violations within the 12 months immediately preceding the notice of cancellation, of any law, ordinance or regulation limiting the speed of motor vehicles or any of the provisions of the motor vehicle laws of any state, violation of which constitutes a misdemeanor, whether or not the violations were repetitions of the same offense or different offenses.

(g) your auto is:

    (1) so mechanically defective that its operation might endanger public safety;

    (2) used in carrying passengers for hire or compensation. (The use of a motor vehicle for a car pool shall not be considered use of a motor vehicle for hire or compensation.);

    (3) used in the business of transportation of flammables or explosives;

    (4) an authorized emergency vehicle;

    (5) changed in shape or condition during the policy period so as to increase the risk substantially; or

    (6) subject to an inspection law and has not been inspected or, if inspected, has failed to qualify.

(2) We must mail notice to the policyholder 30 days prior to the effective date of cancellation, unless we are cancelling for non-payment of premium. To cancel for non-payment, we will mail notice to the policyholder 10 days prior to the termination of coverage.

d) In any case of cancellation by us under items b) or c) above, our mailing of notice to the policyholder's last known address will constitute proof of notice as of the date we mail it. We will retain premium for days covered during the policy period.

e) Premium refund, if any due, will be made within 30 days of:

    (1) the date we cancel; or

    (2) the date we receive the policyholder's request to cancel.

Mailing or delivery of our check will constitute tender of refund.

## 6. DIVIDENDS

The policyholder is entitled to any dividends which are declared by the Board of Directors and are applicable to coverages in this policy.

## 7. IF YOU BECOME BANKRUPT

Bankruptcy or insolvency of any insured will not relieve us of any obligation under the terms of this policy.

## 8. UNAUTHORIZED USE OF OTHER MOTOR VEHICLES

Protection in this policy does not apply to other motor vehicles which any insured:

a) uses without a reasonable belief that the insured is entitled to do so.

b) has stolen.

c) knows to have been stolen.

## 9. FRAUD AND MISREPRESENTATION

a) THIS POLICY WAS ISSUED IN RELIANCE ON THE INFORMATION YOU PROVIDED AT THE TIME OF YOUR APPLICATION FOR INSURANCE COVERAGE. WE MAY VOID THIS POLICY, DURING THE FIRST POLICY PERIOD, OR DENY COVERAGE UNDER THIS POLICY, OR, AT OUR ELECTION, ASSERT ANY OTHER REMEDY AVAILABLE UNDER APPLICABLE LAW, IF YOU, OR ANY INSURED PERSON SEEKING COVERAGE UNDER THIS POLICY KNOWINGLY CONCEALED, MISREPRESENTED OR OMITTED ANY MATERIAL FACT OR ENGAGED IN FRAUDULENT CONDUCT AT THE TIME THE APPLICATION WAS MADE OR AT ANY TIME DURING THE POLICY PERIOD.

b) WE MAY VOID THIS POLICY, DURING THE FIRST POLICY PERIOD, DENY COVERAGE FOR AN ACCIDENT OR LOSS, OR AT OUR ELECTION, ASSERT ANY OTHER REMEDY AVAILABLE UNDER APPLICABLE LAW, IF ANY INSURED PERSON OR ANY OTHER PERSON SEEKING COVERAGE UNDER THIS POLICY HAS KNOWINGLY CONCEALED OR MISREPRESENTED

*General Policy Conditions*

ANY MATERIAL FACT OR ENGAGED IN FRAUDULENT CONDUCT IN CONNECTION WITH THE FILING OR SETTLEMENT OF ANY CLAIM.

c) NO PERSON OR ORGANIZATION WHO ENGAGES IN FRAUDULENT CONDUCT IN CONNECTION WITH THE APPLICATION PROCESS, AN ACCIDENT OR FILING A CLAIM, OR ENGAGES IN ANY MATERIAL MISREPRESENTATION REGARDING THE ISSUANCE OF THIS POLICY SHALL BE ENTITLED TO RECEIVE ANY PAYMENT UNDER THIS POLICY AT ANY TIME.

## 10. LEGAL ACTION LIMITATIONS

No legal action may be brought against us concerning any of the coverages provided in this policy until the insured has fully complied with all terms of the policy.

Under the Auto Liability coverages of this policy, no legal action may be brought against us until judgment against the insured has been finally determined after trial. This policy does not give anyone the right to make us a party to any action to determine the liability of an insured.

Under the Uninsured Motorists coverage, beginning the date we receive notice of loss, any arbitration or the filing of legal action against us must be made within the greater of two years or the date we deny the claim in whole or in part.

The laws of the state in which the accident occurred will determine the time limit for the filing of legal action against us.

## 11. SUBROGATION

We have the right of subrogation under the:

a) Physical Damage;

b) Auto Liability;

c) Family Compensation; and

d) Medical Payments;

coverages in this policy and its endorsements. This means that after paying a loss to you or others under this policy, we will have the insured's right to sue for or otherwise recover such loss from anyone else who may be liable. Also, we may require reimbursement from the insured out of any settlement or judgment that duplicates our payments. These provisions will be applied in accordance with state law. Any insured will sign such papers, and do whatever else is necessary to transfer these rights to us, and will do nothing to prejudice them.

## 12. NON-SUFFICIENT FUNDS AND LATE PAYMENT CHARGES

The company reserves the right to impose a fee for any premium payment that is unable to be processed due to non-sufficient funds, or if there are non-sufficient funds in an account that is being utilized for electronic funds transfer (EFT) payments, or if the premium is not paid by the due date. This is under the terms and conditions approved where required by the Department of Insurance.

# MUTUAL POLICY CONDITIONS

(Applicable only to policies issued by Nationwide Mutual Insurance Company--Nationwide Mutual Fire Insurance Company.)

If this policy is issued by Nationwide Mutual Insurance Company or Nationwide Mutual Fire Insurance Company, the policyholder is a member of the company issuing the policy while this or any other policy issued by one of these two companies is in force. While a member, the policyholder is entitled to one vote only--regardless of the number of policies issued to the policyholder--either in person or by proxy at meetings of members of said company.

*General Policy Conditions*

The annual meeting of members of Nationwide Mutual Insurance Company will be held at the Home Office at Columbus, Ohio, at 10 a.m. on the first Thursday of April. The annual meeting of members of Nationwide Mutual Fire Insurance Company will be held at the Home Office at Columbus, Ohio, at 9:30 a.m. on the first Thursday of April. If the Board of Directors of either of the above companies should elect to change the time or place of meeting, that company will mail notice of the change to the policyholder at the address last known to it. The company will mail this notice at least 10 days in advance of the meeting date.

This policy is non-assessable, meaning that the policyholder is not subject to any assessment beyond the premiums the above companies require for each policy term.

**IN WITNESS WHEREOF:** Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company, Nationwide Property and Casualty Insurance Company, or Nationwide General Insurance Company, whichever is the issuing company as shown in the Declarations, has caused this policy to be signed by its President and Secretary, and countersigned as may be required by a duly authorized representative of the company.

*Patricia B. Hatler*
**Secretary**

**President**
Nationwide Mutual Insurance Company
Nationwide Mutual Fire Insurance Company

**President**
Nationwide Property and Casualty Insurance Company
Nationwide General Insurance Company



Nationwide Mutual Insurance Company • Nationwide Mutual Fire Insurance Company
Nationwide Property and Casualty Insurance Company • Nationwide General Insurance Company
Home Office: Columbus, Ohio 43215-2220





Endorsement 3329

## *Amendatory Endorsement*

**Please Attach this important addition to your auto policy.**

It is agreed this policy is amended as follows:

## PHYSICAL DAMAGE

(damage to your auto)

## ADDITIONAL DEFINITIONS APPLICABLE TO THESE COVERAGES

Item 2. is replaced to read:

2. "EQUIPMENT" means anything usual and incidental to the use of a motor vehicle as a motor vehicle. Equipment does not include customization or any type of trailer.

The following definition is added:

3. "CUSTOMIZATION" means devices, accessories, enhancements, and changes, other than those offered by the manufacturer of the motor vehicle specifically for that model which alter the appearance, performance or function of a motor vehicle. This includes custom refinish, decals, and graphics.

## COVERAGE EXCLUSIONS

We will not pay for loss:

To Customization, other than original equipment from the manufacturer, in or upon your motor vehicle. However, this exclusion does not apply up to the first $1,500 of Customization.

## LIMITS AND CONDITIONS OF PAYMENT

### ACTUAL CASH VALUE

The following sentence is added:

The limit of coverage shall not be increased for Customization unless such Customization has been specifically declared to us and an additional charge is paid.

This endorsement applies as stated in the policy Declarations.

This endorsement is issued by the company shown in the Declarations as the issuing company.

**NATIONWIDE INSURANCE COMPANIES**
**One Nationwide Plaza  Columbus, OH  43215-2220**
**Hearing or Voice Impaired:  1-800-622-2421 (TTY only)**
**nationwide.com**

V-3329



Endorsement 3325

## Amendatory Endorsement- Uninsured Motorists Coverage

### (Illinois)

**Please attach this important addition to your policy**

With this endorsement, the policy is amended as follows:

## UNINSURED MOTORISTS

### ARBITRATION

Item 6. is replaced to read:

6. When used, arbitration of uninsured motorists claims is binding on the insured and the company for the amount of damages not exceeding $50,000 for bodily injury to any one person, $100,000 for bodily injury to two or more persons in any one motor vehicle accident, or the policy limits for bodily injury, whichever is less.  If the award exceeds these limits, the company or the insured may demand a trial de novo.  This right must be used within 60 days after the award.  Trial will be in a court of competent jurisdiction.

This endorsement applies as stated in the policy Declarations.

This endorsement is issued by the company shown in the Declarations as the issuing company.

**NATIONWIDE INSURANCE COMPANIES**
**One Nationwide Plaza Columbus, OH  43215-2220**
**Hearing or Voice Impaired: 1-800-622-2421 (TTY only)**
**nationwide.com**

V-3225



*Policyholder Information*

### Required Legal Notice

Thank you for giving us the opportunity to provide your insurance protection. We appreciate the confidence you place in us to handle your insurance needs.

In order to provide each of our policyholders with the best rate available, Nationwide®, like many insurance companies, uses information obtained from various consumer reporting agencies as part of our rating process. The information includes prior insurance history and consumer history as part of our rating process. Based on information received from the consumer-reporting agency below, your policy premium did not result in our most reduced rate. There are many categories of consumer ratings, and unless you qualify for the very top consumer rating, we are required by law to send you this notice. In receiving this notification it does not necessarily indicate that you have a poor consumer report. Please note that the consumer-reporting agency did not make the decision to take this adverse action and cannot provide the specific reasons for the rating decision.

If you would like to review the consumer report used to develop your policy premium, you may obtain a free copy of the report from the consumer-reporting agency within 60 days of the receipt of this letter. You also have the right to dispute the accuracy or completeness of any information contained in the report with the consumer-reporting agency. If after your review of the report, the consumer reporting agency based on your challenging of the information makes changes to the content, please contact us so we can determine the effect on your premium.

To request a copy of your consumer report, please contact:

TRANS UNION CONSUMER RELATIONS
P.O. BOX 1000
2 BALDWIN PLACE
CHESTER, PA 19022
1-800-646-1938

Nationwide uses a consumer-based insurance score as part of its pricing process. The following are the primary characteristic(s) that influenced your insurance score:

Number of times an account, currently or in the past, has been past due.

Number of public records such as civil judgments, tax liens, and bankruptcies.
Time since most recent account opened.

Number of existing accounts.

Should you have questions relating to how Nationwide utilizes consumer reports in the rating of your policy, please contact our Service Center at 1-866-687-7551.

Thank you for choosing Nationwide. We value your business.

**Nationwide Mutual Insurance Company and Affiliated Companies**
**One Nationwide Plaza Columbus, OH 43215-2220**
**Hearing or Voice Impaired: 1-800-622-2421 (TTY Only)**
**nationwide.com**
Nationwide is a federally registered service mark of Nationwide Mutual Insurance Company.

PM992L0 (8-05)

V-6646

# EXHIBIT B





# NEWMAN ♦ RAIZ, LLC
### ATTORNEYS AT LAW

JAMES P. NEWMAN
MICHAEL J. RAIZ*
MATTHEW J. DOUGLAS

WILLIAM H. RANSOM
MICHAEL B. YOVANOVICH
RAPHAEL D. STRZELECKI

* ALSO LICENSED IN INDIANA

April 24, 2007

Sondra Hopper
Claims Department
**Nationwide Insurance Company of America**
13085 Hamilton Crossing Boulevard, Suite 250
Carmel, Indiana 46032-1431
*Via certified mail*

Re:    Romeo and Adoracion Pantaleon
       Your Claim Number:      91 12 C 816481 04102007 01
       Our File Number:        07-701-3624

Dear Ms. Hopper:

Please be advised that I have been retained to represent the interests of Romeo and Adoracion Pantaleon with respect to the above captioned matter. Kindly allow this correspondence to serve as our notice of the accident, as well as our notice and reservation of the right to pursue all recovery against the Nationwide policy, including but not limited to medical payments, uninsured and underinsured motorist coverage.

At this time, without prejudice as to my clients' rights to proceed with any recovery under the Nationwide policy, pursuant to your correspondence of April 11, 2007, please note that my clients have not yet determined whether they will seek recovery for medical expenses under the medical payments provision of the policy, however to the extent that my clients elect to seek such recovery shall complete and provide the proof of claim and medical authorization form along with the associated bills for your review and payment.

Enclosed please find a copy of our notice of attorney's lien. Should you have any questions regarding the above, please feel free to contact me.

Very truly yours,

*Michael J. Raiz*

MJR/tth
cc:    Romeo & Adoracion Pantaleon

# EXHIBIT C



CHICAGO ♦ ST. CHARLES ♦ HIGHLAND, INDIANA
WWW.NBHLAW.COM

# AFFIDAVIT

STATE OF WISCONSIN     )
                              )      SS

COUNTY OF DANE        )

Jeanne Gassen, being first duly sworn, on oath deposes and states that she is State Operations Manager for American Family Mutual Insurance Company and in such capacity has direct access to the policy records (including computer records) of said Company.

That policy information regarding Policy 1016-3486-02-67-FPPA-IL, issued to ITO, YASUO, is contained and preserved on such records. Based upon such records affiant certifies that said policy was in force on APRIL 10, 2007.

The attached is a true reproduction of the content of the whole of said policy setting forth the coverages and limits of liability in effect on the above mentioned date.

Said policy is subject to the Declarations, Insuring Agreements, Terms, Conditions, Limitations, Exclusions, and applicable Endorsements.

That this affiant is experienced in the analysis of such records of said Company and certifies the accuracy of the foregoing policy information.

_Jeanne Gassey_

Jeanne Gassen

Subscribed and sworn to before me this

3rd day of _December_, 2007.

Notary Public, State of Wisconsin

My commission expires: _10·04·09_

C-05448 Rev 08/2007

**DECLARATIONS**
**FAMILY CAR POLICY**

NON-ASSESSABLE POLICY ISSUED BY AMERICAN FAMILY MUTUAL INSURANCE COMPANY
A MEMBER OF THE AMERICAN FAMILY INSURANCE GROUP MADISON, WI.

## PLEASE READ YOUR POLICY

POLICY NUMBER 1016-3486-02-67-FPPA-IL

LIENHOLDER - SEE BACK SIDE

POLICYHOLDER/NAMED INSURED

ITO, YASUO
4919 W FLETCHER ST
CHICAGO, IL 60641 5145

**EFFECTIVE**
FROM 08-06-2006 TO 08-06-2007
ACCT 007-111-252-00

2006 TOYOTA          SCION TC                    VIN JTKDE167060074730

VEHICLE SYMBOL 19        CLASS CITY 1C      TERRITORY 9

COVERAGES AND LIMITS PROVIDED

BODILY INJURY LIABILITY
$100,000    EACH PERSON        $300,000    EACH OCCURRENCE
PROPERTY DAMAGE LIABILITY    $100,000    EACH OCCURRENCE

MEDICAL EXPENSE    $5,000 EACH PERSON

COMPREHENSIVE    $500    DEDUCTIBLE

COLLISION    $500    DEDUCTIBLE

EMERGENCY ROAD SERVICE

UNINSURED MOTORISTS - BODILY INJURY ONLY
$100,000    EACH PERSON        $300,000    EACH ACCIDENT

ENDORSEMENT-SEE BELOW

RENTAL REIMBURSEMENT - $30 DAILY LIMIT, $750 MAXIMUM
UNDERINSURED MOTORISTS COVERAGE - BODILY INJURY ONLY
$100,000    EACH PERSON        $300,000    EACH ACCIDENT

MULTIPLE VEHICLE AND AIR BAG DISCOUNTS HAVE BEEN APPLIED
AUTO AND HOME PREMIUM ADVANTAGE DISCOUNT HAS BEEN APPLIED
ANTI THEFT DISCOUNT HAS BEEN APPLIED

Declarations effective on the date shown above. These declarations form a part of this policy and replace all other
declarations which may have been issued previously for this policy. If this declaration is accompanied by a new policy,
the policy replaces any which may have been issued before with the same policy number.

AUTHORIZED
REPRESENTATIVE

AGENT    093-815 PHONE    (773) 788-1630

LILIANA M MEDINA
7101 W ARCHER AVE STE 6
CHICAGO, IL 60638-2203

**EXHIBIT D**



Jan 06 08 08:11a    D. Callipari/Allied Ins.    6308792594    



# Nationwide®
## *On Your Side*™

PO Box 606 * Batavia, IL 60510 * *

January 5, 2008

Newman & Raiz, LLC / Attn: Michael J. Raiz
Two First National Plaza
20 S. Clark Street, Suite 1510
Chicago, IL 60602

VIA REGULAR MAIL AND FAX
FAX # 312-580-9111

**OUR INSURED :**  Romeo and Adoracion Pantaleon
**OUR CLAIM NUMBER :**  91 12 C 616481 04102007 01
**DATE OF LOSS :**  04-10-2007

Dear Mr. Raiz,

Please be advised that I am the claims representative handling the Underinsured Motorist claim for our policyholder, Mrs. Adoracion Pantaleon, for the injuries she sustained in the accident on the above-mentioned date. All of your previous correspondences have been going to the Medical Payments representative, Sondra Hopper, when they should have been directed to me.

With that said, in review of the known injuries sustained by Mrs. Pantaleon in this accident, Nationwide Insurance Company does authorize you and our policyholder to accept the settlement proposal of the $100,000.00 (one hundred thousand dollars) limits offered by American Family Insurance, therefore waiving our subrogation rights against the tortfeasor, Mr. Ito in this matter.

Secondly, I would request that you forward to my attention, at the address listed above, your demand package including all medical bills incurred, all medical records and any wage loss verification pertaining to the injuries Mrs. Pantaleon sustained in this accident.

Feel free to contact me directly at (630) 879-2426 should you have any additional questions or concerns at this time.

Sincerely,

Nationwide Insurance Company of America
Dyann Callipari
Claims Department
(630)234-7605
(630)879-2426

* Rule 9.19 of the Rules and Regulations of the Illinois Department of Insurance requires that our company advise you that if you wish to take this matter up with the Department of Insurance, it maintains a Consumer Division in Chicago at 100 West Randolph, Suite 5-570, Chicago, Ill. 60601, Telephone (312) 814-2420 and in Springfield at 320 W. Washington St. in Springfield, Il 62767.

**EXHIBIT E**



CHICAGO ♦ ST. CHARLES ♦ HIGHLAND, INDIANA
WWW.NRHLAW.COM

**IN THE CIRCUIT COURT OF THE SIXTEENTH JUDICIAL CIRCUIT**
**KANE COUNTY, ILLINOIS**

Case No. 2007 L 297

| | | |
|---|---|---|
| PANTALEON <br> Plaintiff(s) | ITO & KUTER <br> Defendant(s) | Clerk of the Circuit Court <br> Kane County, IL <br> JAN 10 2008 <br> 43 <br> FILED ENTERED |
| | KNUSSEN FOR ITO <br> METTS FOR KUTER <br> Defendant(s) | |
| Plaintiff(s) Atty. | | |
| Judge KRAWKA | Court Reporter | Deputy Clerk |
| A copy of this order ☐ should be sent ☐ has been sent | | |
| Present <br> ☐ Plaintiff Atty. ☐ Defense Atty. ☐ Other | | File Stamp |

**ORDER**

THIS CAUSE COMING TO BE HEARD ON PLAINTIFF'S MOTION TO DISMISS ☐ ITO PURSUANT TO GOOD FAITH FINDING;

IT IS HEREBY ORDERED:

1) OVER ☐ KUTER'S OBJECTION, PURSUANT TO REPRESENTATION THAT THERE ARE NO OTHER LIABILITY POLICY'S FOR DEFENDANT ☐ ITO AS TO THE ACCIDENT IN QUESTION, PLAINTIFF'S MOTION IS GRANTED AND ALL ACTIONS SEEKING RECOVERY AS TO THE ☐ KUTER AR PENDING ARE DISMISSED WITH PREJUDICE; COURT RETAINS JURISDICTION TO ENFORCE SETTLEMENT;

2) PURSUANT TO SCR 304(A) THERE IS NO JUST CAUSE TO DELAY APPEAL OR ENFORCEMENT OF THIS ORDER;

3) THE CMC DATE OF 1/16/08 IS STRICKEN;

4) THIS MATTER IS SET FOR CMC/STATUS AS TO JOINDER OF ADDITIONAL COMPLAINTS & FURTHER DISCOVERY ON 2/14/2008 AT 9:00 AM IN ROOM 350.

Date: 1/10/2008    ☐ Yes - Disposal   ☐ No - Disposal

_____
Judge

**EXHIBIT F**



**ATTORNEYS AT LAW**

JAMES P. NEWMAN
MICHAEL J. RAIZ*
MATTHEW J. DOUGLAS

WILLIAM H. RANSOM
MICHAEL B. YOVANOVICH
RAPHAEL D. STRZELECKI

\* ALSO LICENSED IN INDIANA

Writer's E-mail Address is: mjraiz@nrhlaw.com

March 4, 2008

Dyann Callipari
Nationwide Insurance Company of America
Claims Department
P.O. Box 605
Batavia, Illinois 60510

Re:    Romeo & Adoracion Pantaleon
        Your Claim Number: 91 12 C 816481 04102007 01
        Our File Number:    07-799-3624

Dear Ms. Callipari:

As per our prior correspondence, my client continues to assert her demand for underinsured motorist benefits.

As you know, pursuant to Nationwide's approval of settlement with Yasuo Ito for his policy limits with American Family Insurance Company in the amount of $100,000.00, Mr. Ito's policy of insurance has been exhausted, and as such at this time Ms. Pantaleon seeks to proceed with arbitration of the underinsured motorist provision of your policy of insurance. Pursuant to this demand for such benefits, please be advised that Mrs. Pantaleon appoints as her arbitrator:

Daniel A. Grosso
Tourlakes & Grosso
10 Market Place
Manhattan, Illinois 60442

Please advise as to the identity of the arbitrator for Nationwide Insurance Company of America, so that we may proceed. To the extent that Nationwide requires further information from Ms. Pantaleon, please contact me and I will be pleased to provide copies of medical authorizations and/or present Ms. Pantaleon for her examination under oath, or further cooperate as per the terms of the Nationwide policy.

CHICAGO ◆ ST. CHARLES ◆ HIGHLAND, IN
TWO FIRST NATIONAL PLAZA
20 SOUTH CLARK STREET, SUITE 1510, CHICAGO, ILLINOIS 60602
TEL. NO. (312) 580-9000 ~ FAX NO.: (312) 580-9111
WWW.NRHLAW.COM

Re:     Blue Eagle Corporation d/b/a Blue Eagle Mortgage Corporation
        Our File Number:      759.3688
        Addendum A – Incident Information
        Page 1 of 2

The instant 6-2(4) Report arises out of an investigation of the Illinois Department of Financial and Professional Regulation ("Department"). To the extent understood by Blue Eagle Corporation d/b/a Blue Eagle Mortgage Corporation ("Blue Eagle"), the allegations at issue involve an alleged "unlicensed mortgage brokerage branch office at 107 N. Addison Road, 2nd Floor, Addison, Illinois." This report was created pursuant to a request of Attorney Alan Anderson, and is submitted in supplement of its prior responses, that are incorporated into this report, and pursuant to its continued efforts of good faith cooperation.

Pursuant to correspondence of October 15, 2007 as received from Robert Bauer, Senior Investigator for Mortgage Banking with Department, Blue Eagle was informed of an investigation involving an alleged "unlicensed mortgage brokerage branch office at 107 N. Addison Road, 2nd Floor, Addison, Illinois." A copy of the letter from Mr. Bauer is attached as Exhibit A.

Such correspondence from Mr. Bauer was the first notice of any alleged additional unlicensed mortgage brokerage branch office. Please note that as is more fully outlined below, Blue Eagle did not file a 2-6(4) Report to the extent that the first notice of a potential violation within the scope a 2-6(4) violation was received directly from the Department for which Blue Eagle has fully cooperated. At this time, believed to be implicated, pursuant to a review of documents as received from the Department, it appears that Xavier Torres, Salvador Perez and Airel Hermosillo may have some involvement in the alleged unlicensed mortgage brokerage branch office. Mr. Perez and Ms. Hermosillo are allegedly involved as their names and signatures appear on the purported office lease. Mr. Xavier Torres appears to be involved as indicated in the investigation summary of January 3, 2008 (see Exhibit B). Please note that while the October 24, 2007 letter (Exhibit C) indicates additional individuals, Blue Eagle doe not know if such persons are implicated, or do not qualify as employees of Blue Eagle, and thus do not provide any further information as to such persons at this time. Blue Eagle reserves the right to supplement as necessary.

Prior to the initiation of such correspondence, an investigation, as more fully outlined in the January 3, 2008 letter of Attorney Alan I. Anderson, Senior Counsel of the Department's Mortgage Banking Regulation Section, (see Exhibit B) was conducted, following which an interview of Melanio Silungan occurred on October 12, 2007. Follow-up correspondence from Mr. Silungan was received on October 24, 2007 (see Exhibit C).

On January 3, 2008, Blue Eagle received correspondence entitled "Potential Discipline Letter" from Attorney Anderson (see Exhibit D). On January 14, 2008, on behalf of Blue Eagle, your respondent forwarded correspondence to Attorney Anderson (see Exhibit E). On January 29, 2008, reply correspondence was received from Attorney Anderson (see Exhibit F) following which a correspondence was sent on behalf of Blue Eagle on February 14, 2008 (see Exhibit G).

TRANSMISSION VERIFICATION REPORT

TIME    : 05/05/2008 10:26
NAME    :
FAX     :
TEL     :
SER.#   : G7J485271

DATE,TIME              05/05  10:25
FAX NO./NAME           16308792594
DURATION               00:00:43
PAGE(S)                03
RESULT                 OK
MODE                   STANDARD
                       ECM

Jan 06 08 08:11a    D. Callipari/Allied Ins.    6308792594    p.1



**Nationwide®**
*On Your Side™*

PO Box 605 * Batavia, IL 60510 **

January 5, 2008

Newman & Raiz, LLC / Attn: Michael J. Raiz          VIA REGULAR MAIL AND FAX
Two First National Plaza                             FAX # 312-580-9111
20 S. Clark Street, Suite 1510
Chicago, IL 60602

**OUR INSURED :** Romeo and Adoracion Pantaleon
**OUR CLAIM NUMBER :** 91 12 C 816481 04102007 01
**DATE OF LOSS :** 04-10-2007

Dear Mr. Raiz,

Please be advised that I am the claims representative handling the Underinsured Motorist claim for our policyholder, Mrs. Adoracion Pantaleon, for the injuries she sustained in the accident on the above-mentioned date. All of your previous correspondences have been going to the Medical Payments representative, Sondra Hopper, when they should have been directed to me.

With that said, in review of the known injuries sustained by Mrs. Pantaleon in this accident, Nationwide Insurance Company does authorize you and our policyholder to accept the settlement proposal of the $100,000.00 (one hundred thousand dollars) limits offered by American Family Insurance, therefore waiving our subrogation rights against the tortfeasor, Mr. Ito in this matter.

Secondly, I would request that you forward to my attention, at the address listed above, your demand package including all medical bills incurred, all medical records and any wage loss verification pertaining to the injuries Mrs. Pantaleon sustained in this accident.

Feel free to contact me directly at (630) 879-2426 should you have any additional questions or concerns at this time.

Sincerely,

Nationwide Insurance Company of America
Dyann Callipari
Claims Department
(630)234-7806
(630)879-2426

* Rule 9.19 of the Rules and Regulations of the Illinois Department of Insurance requires that our company advise you that if you wish to take this matter up with the Department of Insurance, it maintains a Consumer Division in Chicago at 100 West Randolph, Suite 5-570, Chicago, Ill. 60601, Telephone (312) 814-2420 and in Springfield at 320 W. Washington St. in Springfield, Il 62767.

# EXHIBIT G



CHICAGO ◆ ST. CHARLES ◆ HIGHLAND, INDIANA
WWW.NRHLAW.COM



# NEWMAN ◆ RAIZ, LLC

### ATTORNEYS AT LAW



JAMES P. NEWMAN
MICHAEL J. RAIZ*
MATTHEW J. DOUGLAS

WILLIAM H. RANSOM
MICHAEL R. YOVANOVICH
RAPHAEL D. STRZELECKI

* ALSO LICENSED IN INDIANA

March 10, 2008

Dyann Callipari
Claim Department
Nationwide Insurance Company
PO Box 605
Batavia, Illinois 60510

Re:     Adoracion Pantaleon
        Your Claim No.: 91 12 C 816481 0410 2007 01
        Our File No.: 799-3624

Dear Ms. Callipari:

Enclosed herein you should find the medical records contained in our file with respect to the above referenced matter as you requested. To the extent that you require further records we will provide to you our clients authorization so that you may obtain such accordingly. We provide such authorization under the accord that any medical records which you obtain will be made available to our office as well.

Should you have any questions please do not hesitate to contact me. Thank you for your professional courtesy.

Very Truly Yours,

Michael J. Raiz

MJR/jmf
Enclosures

# EXHIBIT H



NIRO, SCAVONE, HALLER & NIRO, LTD.

CHICAGO ◆ ST. CHARLES ◆ HIGHLAND, INDIANA
WWW.NSHLAW.COM

*T14.3624.*
*FAXED 5/5/2008*
*78F*



# NEWMAN ◆ RAIZ, LLC
## ATTORNEYS AT LAW

JAMES P. NEWMAN
MICHAEL J. RAIZ*
MATTHEW J. DOUGLAS

WILLIAM H. RANSOM

———————————
* ALSO LICENSED IN INDIANA

Writer's E-mail Address is: mjraiz@nrhlaw.com

May 5, 2008

Dyann Callipari
Nationwide Insurance Company of America
Claims Department
P.O. Box 605
Batavia, Illinois 60510
*Via facsimile*

---

**Facsimile Transmission**

To:    Ms. Callipari – (630) 879-2594
From:  Michael J. Raiz
       Newman Raiz, LLC - (312) 580-9000
Pages: 3 (with attachment)

This facsimile may contain confidential or privileged
information. Receipt of this facsimile by anyone other
than the intended recipient does not constitute permission
to examine, copy or distribute this facsimile. If received in
error, kindly notify us and destroy this facsimile.

---

Re:    Romeo & Adoracion Pantaleon
       Your Claim Number:  91 12 C 816481 04102007 01
       Our File Number:     07-799-3624

Dear Ms. Callipari:

As per my prior correspondence, my client continues to assert her demand for underinsured motorist benefits. We have previously provided you with our Ms. Pantaleon's medical bills, and have offered to provide her recorded statement, as well as authorization such that Nationwide may obtain any necessary medicall records. On March 4, 2008, we disclosed our arbitrator for purposes of underinsured motorist benefits. For your review and consideration, I attach a copy of the correspondence of March 4, 2008. To date, we have yet to hear from Nationwide regarding your selection of an arbitrator.

So that we may advance this matter, please advise within the next seven (7) days as to your arbitrator. Thank you for your professional courtesy.

Very truly yours,

*Michael J. Raiz*

MJR/th

cc:    Adoracion Pantaleon

CHICAGO ◆ ST. CHARLES
TWO FIRST NATIONAL PLAZA
20 SOUTH CLARK STREET, SUITE 1510, CHICAGO, ILLINOIS 60602
TEL. NO. (312) 580-9000 ~ FAX NO.: (312) 580-9111
WWW.NRHLAW.COM



# NEWMAN ◆ RAIZ, LLC

## ATTORNEYS AT LAW

JAMES P. NEWMAN
MICHAEL J. RAIZ*
MATTHEW J. DOUGLAS

WILLIAM H. RANSOM
MICHAEL B. YOVANOVICH
RAPHAEL D. STRZELECKI

◆ ALSO LICENSED IN INDIANA

Writer's E-mail Address is: mjraiz@nrhlaw.com

March 4, 2008

Dyann Callipari
Nationwide Insurance Company of America
Claims Department
P.O. Box 605
Batavia, Illinois 60510

Re:    Romeo & Adoracion Pantaleon
       Your Claim Number: 91 12 C 816481 04102007 01
       Our File Number:      07-799-3624

Dear Ms. Callipari:

As per our prior correspondence, my client continues to assert her demand for underinsured motorist benefits.

As you know, pursuant to Nationwide's approval of settlement with Yasuo Ito for his policy limits with American Family Insurance Company in the amount of $100,000.00, Mr. Ito's policy of insurance has been exhausted, and as such at this time Ms. Pantaleon seeks to proceed with arbitration of the underinsured motorist provision of your policy of insurance. Pursuant to this demand for such benefits, please be advised that Mrs. Pantaleon appoints as her arbitrator:

Daniel A. Grosso
Tourlakes & Grosso
10 Market Place
Manhattan, Illinois 60442

Please advise as to the identity of the arbitrator for Nationwide Insurance Company of America, so that we may proceed. To the extent that Nationwide requires further information from Ms. Pantaleon, please contact me and I will be pleased to provide copies of medical authorizations and/or present Ms. Pantaleon for her examination under oath, or further cooperate as per the terms of the Nationwide policy.

Re:    Blue Eagle Corporation d/b/a Blue Eagle Mortgage Corporation
       Our File Number:    759.3688
       Addendum A – Incident Information
       Page 1 of 2

The instant 6-2(4) Report arises out of an investigation of the Illinois Department of Financial and Professional Regulation ("Department"). To the extent understood by Blue Eagle Corporation d/b/a Blue Eagle Mortgage Corporation ("Blue Eagle"), the allegations at issue involve an alleged "unlicensed mortgage brokerage branch office at 107 N. Addison Road, 2nd Floor, Addison, Illinois." This report was created pursuant to a request of Attorney Alan Anderson, and is submitted in supplement of its prior responses, that are incorporated into this report, and pursuant to its continued efforts of good faith cooperation.

Pursuant to correspondence of October 15, 2007 as received from Robert Bauer, Senior Investigator for Mortgage Banking with Department, Blue Eagle was informed of an investigation involving an alleged "unlicensed mortgage brokerage branch office at 107 N. Addison Road, 2nd Floor, Addison, Illinois." A copy of the letter from Mr. Bauer is attached as Exhibit A.

Such correspondence from Mr. Bauer was the first notice of any alleged additional unlicensed mortgage brokerage branch office. Please note that as is more fully outlined below, Blue Eagle did not file a 2-6(4) Report to the extent that the first notice of a potential violation within the scope a 2-6(4) violation was received directly from the Department for which Blue Eagle has fully cooperated. At this time, believed to be implicated, pursuant to a review of documents as received from the Department, it appears that Xavier Torres, Salvador Perez and Airel Hermosillo may have some involvement in the alleged unlicensed mortgage brokerage branch office. Mr. Perez and Ms. Hermosillo are allegedly involved as their names and signatures appear on the purported office lease. Mr. Xavier Torres appears to be involved as indicated in the investigation summary of January 3, 2008 (see Exhibit D). Please note that while the October 24, 2007 letter (Exhibit C) indicates additional individuals, Blue Eagle doe not know if such persons are implicated, or do not qualify as employees of Blue Eagle, and thus do not provide any further information as to such persons at this time. Blue Eagle reserves the right to supplement as necessary.

Prior to the initiation of such correspondence, an investigation, as more fully outlined in the January 3, 2008 letter of Attorney Alan I. Anderson, Senior Counsel of the Department's Mortgage Banking Regulation Section, (see Exhibit B) was conducted, following which an interview of Melanio Silungan occurred on October 12, 2007. Follow-up correspondence from Mr. Silungan was received on October 24, 2007 (see Exhibit C).

On January 3, 2008, Blue Eagle received correspondence entitled "Potential Discipline Letter" from Attorney Anderson (see Exhibit D). On January 14, 2008, on behalf of Blue Eagle, your respondent forwarded correspondence to Attorney Anderson (see Exhibit E). On January 29, 2008, reply correspondence was received from Attorney Anderson (see Exhibit F) following which a correspondence was sent on behalf of Blue Eagle on February 14, 2008 (see Exhibit G).

Jan 06 08 08:11a    D. Callipari/Allied Ins.    6308792584    p.1



**Nationwide®**
*On Your Side™*

PO Box 605 · Batavia, IL 60510 · ·

January 5, 2008

Newman & Raiz, LLC / Attn: Michael J. Raiz          **VIA REGULAR MAIL AND FAX**
Two First National Plaza                            **FAX # 312-580-9111**
20 S. Clark Street, Suite 1510
Chicago, IL 60602

**OUR INSURED :** Romeo and Adoracion Pantaleon
**OUR CLAIM NUMBER :** 91 12 C 816481 04102007 01
**DATE OF LOSS :** 04-10-2007

Dear Mr. Raiz,

Please be advised that I am the claims representative handling the Underinsured Motorist claim for our policyholder, Mrs. Adoracion Pantaleon, for the injuries she sustained in the accident on the above-mentioned date. All of your previous correspondences have been going to the Medical Payments representative, Sondra Hopper, when they should have been directed to me.

With that said, in review of the known injuries sustained by Mrs. Pantaleon in this accident, Nationwide Insurance Company does authorize you and our policyholder to accept the settlement proposal of the $100,000.00 (one hundred thousand dollars) limits offered by American Family Insurance, therefore waiving our subrogation rights against the tortfeasor, Mr. Ito in this matter.

Secondly, I would request that you forward to my attention, at the address listed above, your demand package including all medical bills incurred, all medical records and any wage loss verification pertaining to the injuries Mrs. Pantaleon sustained in this accident.

Feel free to contact me directly at (630) 879-2426 should you have any additional questions or concerns at this time.

Sincerely,

Nationwide Insurance Company of America
Dyann Callipari
Claims Department
(630)234-7806
(630)879-2426

\* Rule 9.19 of the Rules and Regulations of the Illinois Department of Insurance requires that our company advise you that if you wish to take this matter up with the Department of Insurance, it maintains a Consumer Division in Chicago at 100 West Randolph, Suite 5-570, Chicago, Ill. 60601. Telephone (312) 814-2420 and in Springfield at 320 W. Washington St. in Springfield, Il 62767.

```
TRANSMISSION VERIFICATION REPORT
```

```
                                    TIME  : 05/05/2008 10:26
                                    NAME  :
                                    FAX   :
                                    TEL   :
                                    SER.# : G7J485271
```

```
DATE,TIME              05/05  10:25
FAX NO./NAME           16308792594
DURATION               00:00:43
PAGE(S)                03
RESULT                 OK
MODE                   STANDARD
                       ECM
```

# EXHIBIT I



NEEDHAM ◆ BLAIR, LLC

CHICAGO ◆ ST. CHARLES ◆ HIGHLAND, INDIANA
WWW.NBHLAW.COM



# NEWMAN ◆ RAIZ, LLC

### ATTORNEYS AT LAW

JAMES P. NEWMAN
MICHAEL J. RAIZ*
MATTHEW J. DOUGLAS

WILLIAM H. RANSOM
MICHAEL B. YOVANOVICH
RAPHAEL D. STRZELECKI

◆ ALSO LICENSED IN INDIANA

Writer's E-mail Address is: mjraiz@nrhlaw.com

September 20, 2007

Attorney Kurt S. Rasmussen
James M. Hoffman & Associates
20 North Martingale Road, Suite 410
Schaumburg, Illinois  60163

Re:   *Adoracion Pantaleon v. Yasuo Ito et al*
      Court Number:        2007 L 297 (Kane)
      Our file number:     07-799-3624

Dear Attorney Rasmussen:

Please allow this correspondence to serve as our demand on behalf of Adoracion Pantaleon of settlement against your insured Yasuo Ito for the policy limits of his policy of insurance with American Family Insurance Company, believed to be $100,000.00.

**Liability**

Attached please find a copy of the Illinois Traffic Crash Report as it relates to the instant automobile accident.  In summary, on April 10, 2007, Adoracion Pantaleon was operating her 2006 Lexus RX330 in the westbound lanes of Interstate 88.  As she approached mile marker 116, your client Yasuo Ito crossed over the grassy median, and violently collided with Mrs. Pantaleon's vehicle.  As a result of such collision, her vehicle was struck by a vehicle operated by the Thomas M. Kuter.  Importantly, the collision was of significant impact such that her vehicle was declared a total loss by her insurer.  I attach copies of photographs of the damage to her vehicle.

As you know, Illinois law has long held that in a cross-over style motor vehicle accident, the burden shifts to the defendant to show that the accident was caused by conditions and events other than the defendant's own negligence. *Osbourne v. O'Brien*, 134 Ill. App. 3d

CHICAGO ◆ ST. CHARLES ◆ HIGHLAND, IN
TWO FIRST NATIONAL PLAZA
20 SOUTH CLARK STREET, SUITE 206, CHICAGO, ILLINOIS 60602
TEL. NO. (312) 580-9000 ~ FAX NO.: (312) 580-9111
WWW.NRHLAW.COM

240 (3d Dist. 1985); *Cruse v. Hines*, 92 Ill. App. 3d 8844 (3d Dist. 1981). As has been raised in our motion for summary judgment on the issue of liability, a copy of which has been previously served upon you, to the extent that Mr. Ito has offered no affirmative defense asserting that the accident was caused by conditions and events other than his own negligence, unless there is further information which Mr. Ito has not yet disclosed, there is simply no question as to the liability of Mr. Ito.

Further, in that Mrs. Pantaleon was operating her vehicle in her own lane of traffic, notwithstanding the grassy median separating the westbound lanes from the eastbound lanes, there is no reasonable argument as to comparative negligence on the part of Mrs. Pantaleon. Mr. Ito owed a duty to Mrs. Pantaleon to operate his vehicle in a reasonably safe manner. He simply did not do so, and in this failure is liable for the injuries proximately caused to Mrs. Pantaleon.

## Injuries

As a result of the instant motor vehicle collision, Mrs. Pantaleon sustained a fracture to her right foot with associated complications, as well as other injuries including to her neck and shoulder. Following the motor vehicle accident Mrs. Pantaleon was admitted to Provena Mercy Hospital in Aurora, Illinois. Following her discharge, Mrs. Pantaleon was treated and continues to treat for her injuries by the providers as disclosed in the attached summary of expenses. While she has not received surgery on her foot to date, we are informed that Mrs. Panteleon's treaters have informed her that there is a likelihood that she may require surgery in the very near future. Mrs. Pantaleon continues to suffer every minute of everyday from the injuries that were solely and proximately caused by Mr. Ito.

Should there be any question as to the extent of her injuries, one need only consider that to date Mrs. Pantaleon has incurred substantial medical expenses in the amount of $56,310.58. We expect that she will continue to incur medical expenses, and to the extent that future surgery with associated physical rehabilitation is required, additional medical expenses will likely exceed the policy limits of Mr. Ito's contract of insurance. In addition to her medical expenses, Mrs. Pantaleon has sustained wage loss in the amount of $8,625.76, the breakdown of which is included in the summary of expenses.

This is not a soft tissue case. The specials in the matter are not contrived and not the result of built-up treatment. Further, as your experience will tell you, given that Mrs. Pantaleon has sustained a fracture of her foot with complications that may require surgery, it is likely that Mrs. Pantaleon will suffer permanent injury, including the early onset of arthritis.

## American Family has a Duty to Settle this Claim

As you know, Illinois has imposed upon insurers an implied duty of good faith and fair dealing of treating its insured's interests at least as equal to its own. *Cernocky v.*

*Indemnity Ins. Co.*, 69 Ill. App. 2d 196 (1966); *Olympia Fields Country Club v. Bankers Indemnity Ins. Co.*, 325 Ill. App. 649 (1945). Indeed to the extent that an insurance company, either as a result of negligence or in bad faith, refuses to settle a case within the policy limits, it may be liable for the full amount of a judgment obtained against its insured, regardless of its policy limits. *DeGraw v. State Security Ins. Co.*, 40 Ill. App. 3d 26 (1976). Illinois courts have also allowed the imposition of punitive damages against and insurer, where the excess judgment arises as a result of bad faith. *O'Neill v. Gallant Ins. Co.*, 769 N.E.2d 100 (2002).

### Demand for Payment of Policy Limits

There is simply no issue that this accident was caused by the negligence of your insured, Yasuo Ito. While Mr. Ito has denied negligence, he has not asserted any affirmative defense to rebut the presumption of his negligence. Indeed, a cursory review of the police report indicates that your client informed the responding police officer that he was talking on his cell phone just prior to the crash and did not know why he suddenly started to lose control. Further, Mr. Ito even admits to operating his vehicle at 70 miles per hour in a 55 mile per hour zone. Pursuant to Supreme Court Rule 137 requiring a good faith basis to support a denial of the allegations of the complaint, other than a straight denial of negligence, I am at this time unaware of the nature of Mr. Ito's defense.

Moreover, there is also no question that Mrs. Pantaleon has sustained injuries that were proximately caused by the negligence of your insured. Mrs. Pantaleon has incurred medical expenses in the amount of $56,310.58. Given that she has recently been informed that she may require surgery due to complications with her foot, it is likely that her medical expenses will approach or exceed the policy limits of Mr. Ito's policy of insurance.

Even discounting the future surgery, when the medical expenses incurred to date are coupled with the wage loss of $8,625.76, the special damages alone are $64,936.34! As you will see at Mrs. Pantaleon's deposition, she will make an excellent witness before a jury of her peers. At trial, she will explain the severity of the injuries she has sustained. She will outline in great detail the pain and suffering she has experienced to date as well as the sheer enormity of her loss of normal life due to the injuries sustained. It doesn't take much to imagine the pain and difficulty of walking up the stairs or of just trying to take a shower with a broken foot. Her treaters will testify that her injuries were sustained as a result of the accident, that such injuries were painful and will testify as to the permanent & future nature of her injury. At trial, we will also present the testimony of Mrs. Pantaleon's husband and family who will describe the pain that their loved one has suffered and how this accident has tragically affected every aspect of her life.

As you know, while we have filed our motion for summary judgment on the issue of liability, as a matter of professional courtesy, I have agreed to hold off on setting a briefing schedule, pending your discovery deposition of Mrs. Pantaleon. In your stead as a seasoned litigator, you no doubt know that Mrs. Pantaleon will incur substantial

expense in order to prepare this matter for trial. Before we undertake such substantial additional and settlement prohibiting cost, on behalf of Mrs. Pantaleon a demand of unconditional settlement for the policy limits of Mr. Ito's policy of insurance, believed to be $100,000.00 (subject to review of the declaration page for same), is hereby tendered to you for communication to both Mr. Ito and his insurer American Family Insurance Company. We also request that as part of the settlement that Mr. Ito provide us with an affidavit that he has no other policies of insurance that are available to him for this accident.

This demand for the payment of the policy limits will expire at the **close of business on November 7, 2007**, which is one week following the currently scheduled date for Mrs. Pantaleon's deposition (October 31, 2007). This date has been set well in advance to allow Mr. Ito and American Family to complete their respective investigation, including but not limited to ordering and reviewing medical documentation and billing. Notwithstanding your ability to subpoena medical documentation, Mrs. Pantaleon will provide authorizations with the caveat that copies of all such records obtained will be provided to her. No extensions on this demand for settlement will be considered.

Should American Family Insurance Company fail to tender the entire policy limits of Mr. Ito's policy within the time as prescribed above, Mrs. Pantaleon will immediately advance her motion for summary judgment, and will incur any necessary costs to prepare and proceed to trial, at which time she intends to secure a substantial money verdict against Mr. Ito. This verdict will undoubtedly well exceed your client's policy limits. Following the verdict, she will seek to recover this verdict directly from the assets of Mr. Ito, that will include an involuntary assignment of Mr. Ito's cause of action against American Family Insurance Company. To the extent that Mr. Ito has retained his own personal counsel to advise him of his personal consequences should a substantial money judgment in excess of his policy limits be rendered against him in this matter, kindly forward a copy of this letter to his attorney. This is a serious matter that warrants immediate settlement. It is our hope that American Family Insurance Company will protect its insured and his assets through a timely settlement of this matter.

By way of carbon copy of this letter, I am placing Ms. Pantaleon's insurer Nationwide Insurance Company of her claim for underinsured motorist benefits in this matter.

Should you have any questions regarding the above, please do not hesitate to contact me. I look forward to hearing from you.

Very truly yours,

*Michael J. Raiz*
MJR/tth


cc:     Adoracion Pantaleon
        Nationwide Insurance Company – Underinsured Motorist Carrier

CHICAGO ♦ ST. CHARLES ♦ HIGHLAND, IN
TWO FIRST NATIONAL PLAZA
20 SOUTH CLARK STREET, SUITE 200, CHICAGO, ILLINOIS 60602
TEL. NO. (312) 580-9000 ~ FAX NO.: (312) 580-9111
WWW.NRSLAW.COM